PATTEN vs. MARDEN and another.

A person owning an upper mill on a stream has a lawful right to use the water in order to work his mill to the best advantage, subject to this limitation, that if in the exercise of that right and in consequence of it, the mills lower down the stream are rendered useless, the law will interpose so that the owners of the lower mills shall enjoy a fair participation.

The owner of a mill propelled by water conducted to it from a stream through a head race and thence by another race into the same stream, sold a piece of land below the mill "together with all the water power on the mill lot below the mill and clear of the wheel thereof, the grantee having full access to the mill race for all necessary purposes," and the grantor covenanted "that he would in no case out of its then artificial channel turn the water to the injury of the grantee." *Held*, that the grant did not deprive the grantor of the right to use the water for his own mill, according to the rules of law upon that subject independent of the grant, but gave the grantee a right to the regular and uninterrupted flow of the water only so far as it might not be lawfully obstructed for the free use of the mill above.

A complaint by such grantee against the grantor for an injunction, &c., alleging merely "that the defendant had obstructed the waters of said stream at the said race and in said mill, above the mill of the plaintiff, from day to day for a long time, whereby the plaintiff's mill had not been able to run for want of sufficient water, and that the defendant will obstruct the water hereafter as he has heretofore," does not show that the defendant has unlawfully or improperly withheld the water from the plaintiff, and is insufficient.

Where the complaint in such case shows an unauthorized obstruction of the water by the defendant, it presents a proper case for an injunction, notwithstanding the difficulty of framing one which would effectually restrain the defendant from passing from an authorized to an unauthorized detention of the water.

APPEAL from the Circuit Court for *Fond da Lac* County. The circuit court sustained a demurrer to the complaint in this cause, and from that order the plaintiff appealed. The substance of the complaint is briefly stated as follows in the opinion given by the circuit judge sustaining the demurrer: " This action is brought by the plaintiff against the defendants, to restrain them by a perpetual injunction

from obstructing the waters of a certain stream described in the complaint, from flowing through an artificial channel or head-race to a flouring mill occupied by the defendants, and through said flouring mill to the mill and machinery of the plaintiff, below said flouring mill. The claim for this relief is based upon a deed of conveyance, set forth in the complaint, from the owner of the flouring mill, head-race and water power of said stream, to one Ford, who is the grantor of the plaintiff. Mapes, the grantor of Ford, and the owner of the flouring mill, head-race and water power, after granting to Ford a small tract of land below his flouring mill, made a further grant as follows: 'Together with all the water power on said mill lot, below the said Ripon mill and clear of the wheel thereof;' and then in the deed follow these words: 'Said Ford having full access to the said race for all necessary purposes;' and said Mapes covenanted in said deed 'that he would in no case out of its then said artificial channel turn the water to the injury of the said Ford or his assigns.' The Ripon mill was the flouring mill owned by said Mapes, and the Ripon mill lot was a tract of land of about two acres, on which said mill stood, and the tract of land conveyed to Ford was a portion of the mill lot. The complaint does not show whether the water passing through the artificial channel or race to the flouring mill, and through the wheel of the flouring mill, is discharged into the natural channel of the original stream from which the water is taken above, or into an artificial channel or tail-race below the flouring mill, but I infer that the water is discharged into an artificial channel or tail-race below the defendant's mill, for the reason that it appears to be necessary that the water of the stream should pass through the head-race of defendants' mill, and through the mill in order to be here finally used by the plaintiff. The claim of the plaintiff is, that he is entitled, as against those occupying the flouring mill, to have the waters of the stream flow through the head-race to the defendants' mill, and through their mill to his mill and machinery below, with the same *constancy* and *uniformity*, and in the same *volume* or *quantity* as they would flow if the defendants' mill were not there, and the water of

said stream was not used in operating the same, and that any obstruction to the flow of the water through said head-race and mill, for using it in operating defendants' mill, or for any other purpose, is an invasion of their rights; and they claim that the court should intervene by injunction to protect that right. It is only upon this theory of the plaintiff's right that his complaint can be sustained, as the only charge of wrong committed by the defendants is, 'that they obstructed the water in the race and in the Ripon mill above the mills and premises of the plaintiff, from day to day, for a considerable portion of the time,' and the further allegation that 'the defendants will obstruct the 'water hereafter as they have heretofore.' "

June Term
1861.

PATTEN
v.
MARDEN et al.

The defendants entered into possession of the flouring mill formerly owned by Mapes, in December, 1859.

The circuit judge held that the complaint did not show " that the defendants had unlawfully detained or obstructed the waters in the race above their mill, or in their mill," or had used the waters of said stream in a manner unauthorized by law. He was also of the opinion that even if the plaintiff should allege and prove such an unauthorized obstruction and detention of the waters of the stream by the defendants, that would not present a case for an injunction, but the only remedy would be an action for damages.

*By the Court,* COLE, J. We concur in the main in the principles and doctrine laid down by the circuit court in the clear and able opinion given on sustaining the demurrer to the complaint in this case. In one respect the circuit court may have fallen into an error, in supposing that even if the complaint showed an unauthorized obstruction and detention of the waters of the stream by the respondents in their mill and race, it would not then present a case for an injunction. The court seemed to think that the only remedy the appellant would have would be an action for damages sustained in consequence of such unauthorized detention of the waters, but that no injunction would be granted to prevent in future the unlawful act. And the reason assigned was, that it would be difficult to frame an injunction which would

December 11.

effectually restrain the respondents from passing from an authorized to an unauthorized detention of the waters. But however difficult it might be to frame an injunction to meet the emergency of the case, still if the complaint set forth a state of facts calling for the interposition of a court of equity, we are clearly of the opinion that an injunction should be granted to protect the rights of the appellant from violation and invasion. For otherwise the party would be compelled constantly to resort to his action for damages sustained by him, and it is apparent that such a remedy would be entirely inadequate to prevent and redress the injury. Such an unlawful detention of the waters by one proprietor might occasion an irreparable injury to another below, and furnish a fit case for the interposition of a court of equity to grant an injunction. But we fully agree with the circuit court in the opinion that the complaint as it now stands presents no case for an injunction, and therefore a demurrer to it on that ground was properly sustained.

The complaint evidently proceeds upon the theory that the rights and privileges of the respondents to the beneficial use and enjoyment of the water had been to some extent abridged and made subservient to those of the appellant by virtue of the grant contained in the coveyance from Mapes to Ford, the appellant's grantor. But this we consider a mistaken view of the effect of that conveyance. It will be borne in mind that Mapes was the owner of the flouring mill, head-race and water power upon the Ripon mill lot, and that after conveying to Ford a small tract of land below his mill, he made a further grant in the following words : " together with all the water power on said mill lot below the said Ripon mill and clear of the wheel thereof, said Ford having full access to the said race for all necessary purposes ;" and said Mapes covenanted in said deed that he would "in no case out of its then said artificial channel turn the water, to the injury of said Ford or his assigns." The wrongful act complained of is, that the respondents have "obstructed the water of said stream at the said race and in the said Ripon mill, above the mills and premises of the plaintiff, from day to day for a considerable portion of the time,

whereby the plaintiff's mill and machinery has not been able to run for want of sufficient water to propel the same, and he has for that reason lost great gains which he could otherwise have made and enjoyed, namely, the sum of one hundred dollars."

June Term, 1861.

PATTEN
v.
MARDEN et al.

These allegations of the complaint, taken in connection with the clause in the conveyance from Mapes previously cited, disclose the grounds upon which the appellant bases his right to an injunction. He evidently supposes that by virtue of that conveyance, he has some superior right or title in the water power, or, in the language of the circuit court, "that he is entitled, as against the respondents, to have the waters of the stream flow through the head-race to their mill, and through that mill to his mill and machinery below, with the same constancy and uniformity and in the same volume or quantity as they would flow if the respondents' mill were not there and the water of the stream were not used in operating the same, and that any obstruction to the flow of the water through said head-race and mill, for using it in operating the mill, or for any other purpose, is an invasion of his rights." We do not think the words of the grant will bear any such construction. Those words are definite and certain, and ought not to be so extended by construction as to deprive the grantor, or those claiming under him, of the right to use and enjoy the water in his race and mill according to the clear and well settled rules of law upon this subject, independent of the grant. There is no reason for saying that the rights granted by this conveyance were intended to impair and qualify other rights reserved, and which belong to the grantor. The grant is of all the water power of the lot conveyed, *below the said Ripon mill and clear of the wheel thereof*, accompanied with the right of access to the race for all necessary purposes. This is far from showing an intention to cede superior rights in the water power to the appellant, or to abridge or qualify those previously existing in the race above the mill, and in the mill itself. The grant plainly and clearly relates to the water power below the Ripon mill and clear of the wheel. From the language used in the conveyance, we infer that the appellant's mill is situated on an

June Term,
1861.

PATTEN
v.
MARDEN et al.

artificial channel below the Ripon mill, in such a manner as to use the water from the tail-race, as it is called. Obviously it was the right to the regular and uninterrupted flow of the water through the head-race—except as it might be lawfully obstructed for the free use of the Ripon mill—thence through the tail-race, that was intended to be conveyed by the deed of Mapes to Ford. We are unable to perceive that any other or greater right to the use of the water was conveyed, than would ordinarily pass to the owner of lands through which a stream flows, forming a water power thereon. Such being the effect of the conveyance, the parties are remitted to their rights as settled and determined by the principles of the common law. Tested by those principles the complaint does not show that the respondents have obstructed or detained the water further or longer than is absolutely necessary for the use and enjoyment of their mill. Neither party having a superior right, but both being entitled to the common use of the water, the question then is, Have the respondents unlawfully and improperly withheld the water from the appellant's mill ? Upon this point the law was laid down with great clearness and discrimination by the court in the case of *Merrit vs. Brinkerhoff*, 17 Johns., 306–321, where the court say : " The common use of the water of a stream by persons having mills above, is frequently, if not generally, attended with damage and loss to the mills below; but that is incident to that common use, and, for the most part, unavoidable. If the injury is trivial, the law will not afford redress, because every person who builds a mill does it subject to this contingency. The person owning an upper mill on the same stream has a lawful right to use the water, and may apply it in order to work his mills to the best advantage, subject, however, to this limitation, that if, in the exercise of this right and in consequence of it, the mills lower down the stream are rendered useless and unproductive, the law in that case will interpose and limit this common right, so that the owners of the lower mills shall enjoy a fair participation ; and if thereby the owners of the upper mill sustain a partial loss of business and profits, they cannot justly complain, for this rule requires of them

June Term,
1861.

no more than to conform to the principle upon which their right is founded." See also 3 Kent, 439 ; Angell on Watercourses, § 115 et seq.; *Tyler vs. Wilkinson*, 4 Mason, 397 ; *Embrey vs. Owen*, 4 Eng. Law & Eq., 466. Within these authorities we think the complaint in this case was defective in not stating a proper case for an injunction.

The order of the circuit court sustaining the demurrer is therefore affirmed.