GEORGE SEELEY AND OTHERS, vs. JOSEPH BRUSH.

In 1763 *A* petitioned the town of *G* for liberty to erect a dam across an arm of the sea within the town where the tide ebbed and flowed, in order to erect and maintain a tide mill on the pond so formed. The town granted the petition, and executed a conveyance purporting to convey to *A* his heirs and assigns forever, the privilege prayed for. Under this grant *A* erected the dam and mill, and he and his successors used the same, and the pond and privilege connected therewith, for more than a hundred years. In 1864 *B*, the owner of land adjoining the pond, erected in the pond several small stone piers for the support of a building standing on his land and overhanging the water. In an action by a grantee of *A* against *B* for the injury thus caused to his rights in the pond, it was held that, although the town had no power to grant the privilege in question, and the plaintiffs and their grantors had acquired their rights solely by user, yet the grant and petition might properly be considered in order to show the character and extent of the user; and that, as it appeared from the terms of the petition and grant that public and private rights were in no manner to be injured thereby, the user of the plaintiffs did not affect the rights of the public and of riparian proprietors, provided such rights were so exercised as not materially to injure the rights of the plaintiffs; and therefore, it appearing that the erection of the piers caused no actual injury to the plaintiffs, that the action could not be sustained.

ACTION ON THE CASE. The plaintiffs and their grantors had

for more than a hundred years used and occupied a grist-mill, with mill-pond and privilege connected with it, situated at Coscob in the town of Greenwich. The seat of the mill-pond was originally covered by an arm of the sea, being part of Coscob harbor, over which the tide ebbed and flowed ; the water of the pond being cut off from the harbor by the plaintiff's dam and gate. The user of the plaintiff's grantors originated in 1763 in a conveyance from a committee of the town of Greenwich, authorized by a vote of the town, to David Bush, purporting to grant liberty to erect and maintain the mill and dam. This grant was made upon a petition of Bush to the town, for the privilege of erecting the dam and the mill, in which petition it was stated that they " would in no ways incommode but be greatly beneficial to the public, and no ways prejudicial to any man's private property. " The vote of the town " granted the prayer of said petition, " and the conveyance executed by the committee described the right conveyed as " all the liberty that they, the said committee, have right to grant by virtue of the authority to them given from said inhabitants, to build and erect and keep up and maintain a grist-mill and dam at said place. " The defendant was the owner of land adjoining the pond, and for the support of a building belonging to him standing on such land and overhanging the pond, he erected in the pond three small stone piers, which displaced but a small quantity of water and did no actual damage to the plaintiffs. It appeared that the defendant and others owning property adjoining the pond, had at various times for many years used the pond, under a claim of right as riparian owners, for the planting of oysters, and in various other modes. It also appeared that forty years previous to the bringing of the present suit, vessels were built above the dam, and were launched into the pond, and that the flood gate and a portion of the abutments of the dam were removed to allow the vessels to pass out, but that the abutments and the flood gate were immediately thereafter restored, but whether the vessels were so built and launched with or without the consent of the then proprietors of the mill and pond did not appear.

This suit was brought for the injury claimed to have been caused to the plaintiffs' rights by the erection of the piers by the defendant.

The case was tried in the Superior Court before *Sanford, J.,* upon the general issue closed to the court, with notice that the defendant as riparian owner claimed the right to use the water of the pond, as an arm of the sea, to its channel, and that the acts complained of were done in pursuance of such right.

The court rendered judgment for the defendant, and the plaintiffs moved for a new trial.

*Beardsley* and *Curtis,* in support of the motion.

1. The plaintiffs and their predecessors, as against the riparian claim of the defendant, have acquired a right to the use and occupancy of the mill and pond, in the manner set forth in the declaration, by more than one hundred years adverse enjoyment. *East Haven* v. *Hemingway,* 7 Conn., 203 ; *Nichols* v. *Lewis,* 15 id., 136 ; *Borden* v. *Vincent,* 24 Pick., 301 ; Angell on Tide Waters, 235.

2. As to the rights of the public in the pond : 1. These were never navigable waters. *Groton and Ledyard* v. *Hurlburt,* 22 Conn., 178. *Wethersfield and Glastenbury* v. *Humphrey,* 20 id., 218. 2. The public are excluded therefrom, so far as the rights of the plaintiffs are concerned, by the immemorial use and enjoyment thereof by the plaintiffs and their predecessors. And, after so long an occupancy and enjoyment, the court should have presumed a grant from the legislature, or an abandonment thereof by the public. Woolrych on Waters, 412; *Chad* v. *Tilsed,* 2 Brod. & Bing., 403. Angell on Tide Waters, 270 *et seq.*; *Beardslee* v. *French,* 7 Conn., 125.

3. The defendant having made his erections under a claim of title to the *locus in quo,* the plaintiffs' rights of property were thereby put in jeopardy, and they had a right of action although no material injury was sustained. *Chapman* v. *Thames Manufacturing Co.,* 13 Conn., 268 ; *Parker* v. *Gris-*

*wold*, 17 id., 288 ; *Branch* v. *Doane*, 18 id., 233 ; *Mill River Woolen Manufacturing Co.* v. *Smith*, 34 id., 462.

*Ferry*, contra.

HINMAN, C. J. This was an action on the case for an injury caused by erecting certain small stone piers in the plaintiffs' mill pond by which the plaintiffs claim the volume of water, to which they have a right for the operation of their mill, to be lessened. The dam of the plaintiffs is across the upper part of Coscob harbor, and the power which they apply to the operation of their mill is obtained by retaining the water in their pond after the falling of the tide. Originally the place occupied by the mill pond, being the upper part of Coscob harbor, was an arm of the sea, and as such was navigable water, and seems by the finding to have been used as such since the erection of the dam, as vessels have since then been built and launched above the present location of the plaintiffs' dam. It has, however, now ceased to be useful for any such purpose, and has become practically useful only as a mill pond. Still the plaintiffs do not own the soil of the pond. They have a right to the use of it for the purpose of retaining water upon its site in order to operate their mill. But the title, it being navigable water, below high water mark is in the public, with the right of wharfing out in the proprietors along the shore to such an extent as may be done without injury to the plaintiffs' mill pond. Originally they had the right of wharfing out into the harbor so far as it might be done without an injury to navigation. The plaintiffs and those under whom they claim have acquired their right to the use of the premises by user, and of course the extent of their right must be measured by the extent of the user. This user of the plaintiffs' grantors commenced in 1764. It originated in the petition of David Bush to the inhabitants and proprietors of Greenwich, for liberty to erect a tide mill and mill dam on Strickland's brook at Coscob in said Greenwich, "where the said grist mill and dam would no ways incommode, but be greatly beneficial to the public, and be no ways prejudicial

to any man's private property." On this petition a commit-
tee was appointed by the town to grant the privilege asked
for, and that committee did in point of form grant " to said
Bush, his heirs and assigns forever, all the liberty that they,
the committee, had right to grant by virtue of the authority
given by the inhabitants, to build and erect, and keep up and
maintain a grist mill and dam at said place." Now, although ·
the town had no power to grant the privilege in question, yet the
grant and the petition on which it was founded may properly
be looked at for the purpose of seeing what was the extent of
the right claimed under the grant, in order to show the charac-
ter and extent of the user under it. And as it was under this
grant that the dam and mill were built, the petition and the
grant under it show that it was not contemplated or intended
that it should in any manner be injurious to the public or to
the rights of private property, and consequently was not to be
injurious to the rights of riparian proprietors on the waters
of the harbor authorized to be dammed. The right of the
plaintiffs then, acquired by long user, is a right to keep up
their dam across the harbor, and to use that part of the har-
bor which is flowed by the waters of their pond, and, subject
to this right, the riparian proprietors have the same rights
that they always had before the dam was erected; but the ri-
parian proprietors are bound so to use their rights as not to
cause any material or appreciable injury to the plaintiffs'
rights of damming back and retaining the water for their use;
and the public, it would seem, have the same right of fishing
in the waters of this pond, and, if it were practicable, of using
the waters for the purpose of navigation, as it originally had,
provided these rights can be enjoyed without injury to the
right acquired by the plaintiffs. And the finding shows that
these rights to some extent have been in use by the public, as
they have fished and bedded oysters in the pond, and occasion-
ally small vessels have been built upon the shore of it and
launched into the pond. The defendant then, as one of the
proprietors on the shore of the pond, has the right of access to
the water, and to use it so far as he can do so without injury
to the plaintiffs. And the court has found in this case that

while a small quantity of water is displaced by the erection of the piers in question, there has been no damage whatever to the plaintiffs in consequence thereof. It appears to us therefore that the court correctly found the issue for the defendant and rendered judgment in his favor.

In coming to this result we do not intend to say that the defendant would be justified in wharfing out into the pond, or filling in upon the shore, so as materially to affect the value of the plaintiffs' privilege. That would depend upon circumstances which are not before us, as upon the size and shape of the pond; and whether the wharfing or filling would affect materially the capacity of the pond as a receptacle for water to operate the plaintiffs' mill; and the flow of the water to the place where it is used. But we think we can see, what indeed the court has directly found, that piles driven into the ground, or small stone or brick piers on which a building or a bridge may be erected, cannot injure the plaintiffs in the use of the waters of this pond. The displacement of the water by such erections is so inconsiderable as to be wholly inappreciable in respect to the quantity required to operate the plaintiffs' mill, and cannot therefore be the subject of recovery in this action.

The plaintiffs seem to rest upon the idea that every, even the slightest, diminution of the quantity of water which can be held within the limits of the pond, is a technical injury for which an action will lie, because by long continuance it might ripen into a right. And *Parker* v. *Griswold*, 17 Conn., 288, and other similar cases, are cited in support of the claim. If the plaintiffs owned the soil under the waters of the pond then undoubtedly the act of the defendant would be a trespass for which damage would be presumed as a necessary consequence. And perhaps such a material diminution of the volume of water as to affect the power applicable to the operation of their mill might subject the defendant to liability. But the cases on which the plaintiffs rely are not applicable to the case under consideration. In *Parker v. Griswold* there was a material diversion of water which the plaintiff had a right to have flow by and over his land in its accustomed course. And although he owned no mill then operated by the water,

yet his mill privilege might be very valuable, and the diversion of the water from it would necessarily injure his right. The case of an upper proprietor who by means of a dam causes the water to overflow a much greater area than it otherwise would, and thereby by waste and evaporation causes a diminution of the volume of water that flows to a lower proprietor, is much more analagous to this case. Such an injury is committed by every mill owner in respect to the lower proprietors, but we suppose that no one would claim that the reasonable use of the water of a stream by such means was actionable.

We are of opinion therefore that there is no error in the judgment complained of, and a new trial is not advised.

In this opinion the other judges concurred.