THE STATE v. POTTMEYER.

RIPARIAN OWNER.—*Ice.*—When the water of a flowing stream running in its natural channel is congealed, the ice attached to the soil constitutes a part of the land and belongs to the owner of the bed of the stream, who has the right to prevent its removal.

SAME.— *Criminal Law.*— *Trespass.*—Where ice, valuable as an article of commerce, was removed without license, by cutting, from a pool formed by a dam in a stream not navigable, by a person owning the land opposite the place where the ice was cut, but the portion of the pool from which the ice was·removed being over the land of another;

*Held,* that this was a trespass under section 14, 2 G. & H. 462, providing that any person who, without a license from competent authority, shall remove from the lands of another any tree, stone, timber, or other valuable article, shall be guilty of a trespass.

APPEAL from the Cass Circuit Court.

RAY, C. J.—This case was heretofore before this court, and the indictment, charging, that the appellee did then and there unlawfully cut, saw, and remove from land belonging to one Daniel P. Baldwin, in the county of Cass, one hundred cubic feet of ice, of the value of ten dollars, being then and there the property of said Baldwin, without a license, &c., was held good. 30 Ind. 287. Upon the trial of the case, the proof was, that the appellee removed the ice, which was of a specified value as an article of commerce, by cutting from a pool formed by a dam in a stream not navigable, and from the portion of the pool over the land of said Baldwin, the appellee owning the land opposite to the place where the ice was removed.

The court instructed the jury as follows:

"2. If the ice in controversy was formed in the waters of a flowing stream running in its natural channel over, on, and across a part of the land of Baldwin, it is no part of the land, and is not fairly included in 'other valuable article' as used in section 14, page 462, 2 G. & H."

"7. The fact that the ice was cut in the backwater of a mill-dam, where the current of the stream is checked, com-

monly known as a mill-pond, will make no difference, if it was a flowing stream as above described."

The instructions were excepted to, and there was a finding for the appellee.

The statute under which the indictment was found declares, that any person, who without a license so to do from competent authority, shall remove from the lands of another, any tree, stone, timber, or other valuable article, shall be deemed guilty of a trespass.

Upon the former consideration of this case, where the present question was somewhat discussed by counsel, but not decided by this court, the entire absence of direct authority to aid in its decision was observed. Since then, neither the research of counsel nor the attention of the court has been rewarded; and we must therefore look alone to analogies and the application of elementary principles. That there can be property in ice, formed upon an artificial pond, on one's own estate, was there decided, and that it constituted under such circumstances part of the realty, resulted as a necessary conclusion, or an indictment under this section of the statute could not have been sustained. *Bates* v. *The State*, 31 Ind. 72.

Indeed, that water is included in the term land, is taught by the text writers. "'Land,' *Terra*, in the legal signification, comprehendeth any ground, soile, or earth, whatsoever; as meadows, pastures, woods, moores, waters, marishes, furses, and heath," "and lastly, the earth hath in law a great extent upwards, not only of water, as hath been said, but of ayre and all other things even up to heaven; for *cujus est solum ejus est usque ad cœlum,* as is holden, 14 H. 8. fo. 12. 22 Hen. 6. 59. 10 E. 4. 14. *Registrum origin,* and in other bookes." Co. Litt. 4 *a.* Blackstone says, "the word 'land' includes not only the face of the earth, but every thing under it or over it." 2 Bl. Com. 18; Bouv. Law Dic.; 1 Greenl. Cruise, 46. So it was held in *Greyes Case,* Owen, 20, that fish in a pond passed, not to the executor, but to the heir; the court giving judgment, that he who had the water should

have the fish. And they are held as part of the realty. 2 Bouv. Law Dic., title "Pond."

Washburn says, "It may be added, in general terms, that every easement or servitude in lands, being an interest therein, can be acquired only by grant, or what is deemed to be evidence of an original grant. And in this are embraced rights in one man to take away the soil, or profits of the soil of another, called *profit à prendre*, if such right be of a freehold or inheritable character. In the matter of water, the owner of the bed of a stream may grant a certain quantity of water to be taken out of it, or a certain amount of water power measured and ascertained." But a man may grant trees growing on his land, corn on the ground, or fruit upon trees, without deed. So of the timber, stone, or other materials of a house, then standing upon his estate; and the donee in such case may take it away after the donor's death. "The law regards these things as so much of the character of chattels, as not to require the formality of a deed, to pass property in them." Washb. Real Prop. b. 3, ch. 4, § 3; *Brace* v. *Yale*, 10 Allen, 441.

Hilliard states, that " a watercourse is regarded in law as a part of the land over which it flows. Upon this principle it will pass with the latter by a deed or patent, unless expressly reserved. So the right to a watercourse is a freehold interest, of which the owner cannot be deprived, but by the lawful judgment of his peers, or due process of law." 2 Hilliard Real Prop. 203.

But while it must be admitted that water in a pool upon a man's own estate is his property and part of his real estate, it is denied that he has any property in the water of a stream which passes over his soil, but a simple *usufruct* while it passes along. 3 Kent Com. 439, 445. This use it is admitted, however, authorizes the actual taking of a reasonable quantity of the water for domestic, agricultural, and manufacturing purposes. *Id.*

In *Elliott* v. *Fitchburg R. R. Co.*, 10 Cush. 191, Shaw, C. J., says, "The right to flowing water is now well settled to

be a right incident to property in the land; it is a right *publici juris*, of such character, that whilst it is common and equal to all through whose land it runs, and no one can obstruct or divert it, yet, as one of the beneficial gifts of Providence, each proprietor has a right to a just and reasonable use of it, as it passes through his land; and so long as it is not wholly obstructed or diverted, or no larger appropriation of the water running through it is made than a just and reasonable use, it cannot be said to be wrongful or injurious to a proprietor lower down. What is such a just and reasonable use, may often be a difficult question, depending on various circumstances. * * * It is therefore, to a considerable extent a question of degree; still the rule is the same, that each proprietor has a right to a reasonable use of it, for his own benefit, for domestic use, and for manufacturing and agricultural purposes." *Gould* v. *Boston Duck Co.*, 13 Gray, 442; *Brown* v. *Bowen*, 30 N. Y. 519; *Merritt* v. *Brinkerhoff*, 17 Johns. 306; *Patten* v. *Marden*, 14 Wis. 473; *Tyler* v. *Wilkinson*, 4 Mason, 397; *Evans* v. *Merriweather*, 3 Scam. 492.

"The general rule, as a rule of the common law of England, was long since laid down as unquestioned by Lord HOLT, who says, in the case of *Rex* v. *Wharton*, Holt 499, that a river, of common right, belongs to the proprietors of the land between which it runs, to each that part nearest his land. This has been frequently, if not uniformly, adopted as the established rule. Bac. Ab. tit. Perogative; Sir John Daveis' R. 155." *Trustees of Hopkins Academy* v. *Dickinson*, 9 Cush. 544. The uses of the waters of private streams belong to the owners of the lands over which they flow. *Cooper* v. *Williams*, 4 Ohio, 253. "They are as much individual property as the stones scattered over the soil." *Buckingham* v. *Smith*, 10 Ohio, 288. This "property" however, in the water, should be limited to a reasonable use or consumption, as against the rights of other riparian proprietors.

But the entire ground upon which any property in water

as water, flowing in a stream, is denied, in distinction from the admitted property in its *impetus*, is in that, as Blackstone states, "it is a movable, wandering thing, and must of necessity continue common by the law of nature." 2 *Bl. Com.* 18. In *Sury* v. *Pigot*, Popham, 166, it is quaintly said, that an *ejectione firma* will not lie for water "because it is not *firma, sed currit.*" But when this "movable, wandering thing" has congealed and become attached to the soil, does it not, like any other accession thereto, become part of the realty? Wherein does it differ from alluvion, or accretion? which is but the imperceptible deposit or addition of earth, sand, gravel, and other matter made by rivers, floods or other causes, upon land. Angell Watercourses, § 53. It is the adhering of property to something else, by which the owner of one thing becomes possessed of a right to another. Webster's Dictionary, where is cited the sentence from Richard Cobden, "The golden alluvions are there (in California and Australia) spread over a far wider space; they are found not only on the banks of rivers and in their beds, but are scattered over the surface of vast plains." This addition is alluvion, whether arising from natural or artifical causes. 2 Hilliard Real Prop., 195, note *a*; Bouv. Law Dic. It has been held, "the sea-weed thus thrown up by the sea, may be considered as one of those marine increases arising by slow degrees; and according to the rule of the common law, it belongs to the owner of the soil." *Emans* v. *Turnbull*, 2 Johns. 313.

In *Blewett* v. *Tregonning*, 3 A. & E. 554 (30 E. C. L. 151), which was an action for trespass for taking away sand from the plaintiff's close, it was pleaded that the close was contiguous to the seashore; that the sand had from time to time drifted and been carried by the wind from the seashore upon the close and been there deposited. PATTESON, J., said, "I am, however, of opinion that when anything in the nature of soil is blown or lodged upon a man's close, it is part of the close, and he has a right to it against all the world."

If water in a pool upon one's land be part of the realty, •
because fixed and stationary, why is it not, when congealed
over the bed of the stream, to the thread of which his title
extends?

True, nature will in time, if it be not removed, again
change the ice to fluid, and it will pass away from possession;
but not more certainly than the changing winds and the
rising tide will sweep away the shifting sands.

But the Supreme Court of Massachusetts has discussed
this subject, in a case where it was held, that the owner of a
mill-pond on a water course cannot maintain a bill in equity
to restrain a riparian proprietor above, from cutting ice on
the same stream, until the rights of the parties have been
determined at law.   SHAW, C. J., says, "In a case between
the owners of a mill with the privilege of a mill stream,
and the riparian owner of land, on a large pond, supplying
such mill stream, the nearest analogy perhaps, and that is
apparently a strong one, is to that of riparian proprietors, on
a running stream," which is the exact case now in judg-
ment.   He proceeds, "As between these, we think it is
now well settled that the upper proprietor has a right to
make any use of the stream which is beneficial to his estate
and himself, which is reasonable, and does not either wholly
take away the right of the lower proprietor, or does not
practically and in a perceptible and substantial degree
diminish and impair the equal and common right of the
lower proprietor."   The court then questioned the right of
the mill owners to claim any participation in this right to
cut ice enjoyed by the riparian proprietors.   "But," the
Chief Justice continues, "there are other considerations.
It is quite doubtful, considering the complainants' claim as
a claim for actual and substantial damage to their mills,
whether the cutting and carrying away of the ice men-
tioned, or of any quantity of ice, would diminish the vol-
ume of water which would come to the complainants' mills,
and of which they could avail themselves for driving their
mills.   Ice must be cut in winter.   It usually melts in the

latter part of winter or early part of spring, together with the ice and snows of the surrounding country; and these, together with the rains which cause and promote them, constitute what is usually called the spring floods, which commonly cause a great surplus of water in similar mill streams, not only not available to any useful purpose to mills, but often injurious. And it may well be doubted after any quantity of ice cut from such a pond, whether after the spring floods have subsided, and the useless surplus of water passed away, and long before the approach of any 'dry season,' the water in the pond would not be as full and copious for all mill purposes as if no ice had been cut." *Cummings* v. *Barrett*, 10 Cush. 186.

Here the right of the riparian proprietor to cut the ice formed over his land is conceded, provided it does not deprive some one entitled to the use of the water, to a substantial degree, of his rights to such use. In the case before use, no such limitation is involved. If Baldwin has not the right himself to cut the ice (which right it seems to us he possesses), still he has a right to prevent its severance from his land. And this right in him of removal can only be controlled by proof that such act would work a substantial injury to some right possessed by the riparian proprietor opposite, or to some proprietor below on the stream. And in neither case could it deprive him of his property in the ice, but simply control him in its disposition. Indeed, this right in the owner of the fee to remove ice from the stream, subject to a proper enjoyment of the water by others entitled to its use, was decided to exist in *Edgerton* v. *Huff*, 26 Ind. 35.

In *Mill River Manufacturing Co.* v. *Smith*, 34 Conn. 462, where the company owned an artificial mill pond, it was held, that it also owned the ice formed upon the pond, and that it was entitled to have the ice remain where it was; and an action of trespass *quare clausum fregit* was maintained against the riparian proprietors, who owned the bed of the original stream, but did not in that case own the artificial

mill pond, for removing the ice. Clearly, such an action could be maintained by Baldwin, who owned not only the bed of the stream, but the ice itself; and it follows, of course, that the instructions given by the court were erroneous.

Judgment for costs against appellee.

*D. P. Baldwin, D. H. Chase,* and *D. E. Williamson,* Attorney General, for the State.