Filed Oct. 20, 1883.

———————◆———————

No. 9141.

THE BROOKVILLE AND METAMORA HYDRAULIC COMPANY
v. BUTLER ET AL.

EASEMENT.—*Right to Overflow Land.—Ownership of Ice Formed There.*—The owner of an easement to overflow another's land is not entitled to the ice which forms on the water covering the land; such ice belongs to the owner in fee.

SAME.—*White Water Valley Canal.—Right to Take Ice Found on Overflowed Land.*—In constructing the White Water Valley Canal, a large pond producing ice on low lands adjoining and beyond the canal was formed by the flow of water from the canal, the lands covered by which pond had been used by the State and its grantee, the canal company, only for the purpose of overflow. The plaintiff was the grantee of the "canal and its appurtenances."

*Held,* that only the right to overflow, and not the land overflowed itself, was appurtenant to the canal, and that the right to gather ice upon the pond did not belong to the plaintiff, but to the owner of the soil, subject to the condition that no injury should be done to the easement of the plaintiff, and that the quantity of water should not be materially lessened.

From the Decatur Circuit Court.

*J. D. Miller, F. E. Gavin, H. Berry, F. Berry, B. F. Claypool, L. T. Michener* and *T. B. Adams,* for appellant.

*J. S. Butler,* for appellees.

ELLIOTT, J.—Under the general internal improvement act

of 1836, the State, in 1837, for the purposes of constructing a canal, seized land then owned by the heirs of Charles Collett. During that year, and prior to 1842, work was done upon the canal by the State; at the session of the Legislature of the year 1842 a corporation was created named the White Water Valley Canal Company, and all the right and title of the State to the land seized was vested in that corporation; the canal was afterwards completed and was operated by the grantee of the State until the year 1865; in December of that year the canal company conveyed its estate in the canal and appurtenances, reserving, however, all water power and all water rights owned by itself or its lessees; the grantee of the canal company leased to the appellant all the unoccupied water on that part of the canal which is upon the land once owned by the Collett heirs; on that land there was a low piece of ground through which the canal passed; upon this low piece, and immediately adjoining the bank of the canal, is a large pond formed by the water thrown from the channel of the canal; on this pond ice formed in the winter of 1878 and 1879, and was cut and appropriated by the appellees, who were the defendants below.

It is within the power of the Legislature to authorize the seizure of the fee, when that estate is required for the public purpose. When the fee is taken, the owner must be awarded, as compensation, the value of that estate. Our cases declare that the act of 1836 authorized the seizure of the fee, and that this was the estate taken by the State and transmitted to the grantees. *City of Logansport* v. *Shirk*, 88 Ind. 563; *Cromie* v. *Board, etc.*, 71 Ind. 208; *Nelson* v. *Fleming*, 56 Ind. 310; *Water Works Co.* v. *Burkhart*, 41 Ind. 364. It is not without reluctance that we yield to the rule declared in these cases, but we feel that it has become a rule of property which we should not change.

It is not necessary that one claiming an estate in land by virtue of an appropriation made by the State, under the right of eminent domain, should affirmatively show that compen-

sation has been paid, where it appears that the land-owner filed no claim within the time limited by law. If a claim is not filed within the time limited, it is regarded as having been waived. *Nelson* v. *Fleming, supra;* Cooley Const. Lim. (5th ed.), top p. 695.

The State had a right to take and transmit a fee upon due compensation, and as no claim was filed within the time limited, and possession has been held by the State and her grantees for a period of more than forty years, we must conclude that a fee to the canal did vest in the appellant as the grantee of the State.

The title which the appellant acquired was to the canal and its appurtenances. *Sheets* v. *Selden,* 2 Wal. 177. If the land on which the ice formed can be deemed an appurtenance, then the State acquired and transmitted it to her grantee. But land can never be appurtenant to land. This old rule, old as the law itself, forbids the conclusion that the land passed as an appurtenance.

The right to flow lands conveys no right to the land itself; it vests a mere easement in the possessor. The right which the canal company had in the land adjoining the channel of the canal was an easement, and nothing more. The pond which formed is not shown to have been a reservoir or basin of the canal, nor to have constituted any part of the channel. All that can be inferred from the use of the low ground by the appellant and its grantors is that there existed a right to overflow it. A prescriptive right can never be broader than the claim evidenced by user. Phear Rights of Water, 90.

The appellant owns an easement vesting in it a right to do whatever the owner of an easement to overflow another's land may rightfully do; the owners of the fee possess the right to do all acts which a land-owner may lawfully do, not inconsistent with, or injurious to, the easement. The former as owner of the dominant estate has all the rights that such an estate confers; the latter all the rights of an owner of land burdened with an easement.

We come to the decisive question : Is the owner of an easement to flow another's land entitled to the ice which forms on the water covering the land? There is some diversity of opinion upon this question, but our decisions declare that the ice belongs to the owner of the servient estate. In *State* v. *Pottmeyer*, 33 Ind. 402 (5 Am. R. 224), the question was examined thoroughly, and it was held that the land-owner might cut the ice, provided no injury was done to the rights of the owner of the dominant estate; and this was the decision in *Edgerton* v. *Huff*, 26 Ind. 35. This last case has, it is true, been overruled upon one point, but not upon the point to which it is here cited. Again, in *Julien* v. *Woodsmall*, 82 Ind. 568, this question came before the court, and it was held that the right to overflow the land of another for mill purposes did not confer the right to cut the ice formed on the pond. The doctrine of these cases is consistent with long established principles, and is supported by analogous cases. The owner of a servient estate has a right to all the profits which may arise from the soil, and may make such a use of the soil as is not inconsistent with the easement. In the old case of *Goodtitle* v. *Alker*, 1 Burr. 133, it is said that " The owner of the soil has a right to all above and under ground, except only the right of passage, for the king and his people." This general doctrine applies to a private way. Gates may be erected across it, wells may be dug on it, water ways may be constructed under it, sea weed may be gathered off of it, and herbage may be cropped from it. *Bean* v. *Coleman*, 44 N. H. 539 ; *O'Linda* v. *Lothrop*, 21 Pick. 292 ; *Baker* v. *Frick*, 45 Md. 337 (24 Am. R. 506) ; *Emans* v. *Turnbull*, 3 Am. Dec. 427, n. An admirable statement of the rule is that of the court in *Maxwell* v. *McAtee*, 9 B. Mon. 20. There, in speaking of the grant of an easement, it was said : " Notwithstanding such a grant, there remains with the grantor the right of full dominion and use of the land, except so far as a limitation of his right is essential to the fair enjoyment of the right of way which he has granted. It is not necessary that the grantor should ex-

pressly reserve any right which he may exercise consistently with a fair enjoyment of the grant. Such rights remain with him because they are not granted. And for the same reason the exercise of any of them can not be complained of by the grantee, who can claim no other limitation upon the rights of the grantor, but such as are expressed in the grant, or necessarily implied in the right of reasonable enjoyment." The right of a mill-owner to pond water on another's land, the right of one owner to use another's land for a sluice way, the right of one owner to use another's land for drainage purposes, are all easements, and nothing more. *Baer* v. *Martin*, 8 Blackf. 317; *Snowden* v. *Wilas*, 19 Ind. 10. Easements do not take from the owner of the fee the right to make any profitable use he can of his property not inconsistent with the enjoyment of the dominant estate. It is immaterial whether the easement is to flow water over the land or to pond it on the land, in either case, as said in *Mason* v. *Hill*, 5 B. & Ad. 1, the owner of the fee may use it for " profitable purposes." Such a right is said to be " a privilege without profit." *Earl* v. *DeHart*, 1 Beasley, 280. The right to back or pond water on the land of another, whether acquired under the statute or by prescription, gives no right to the land itself, nor to the profits which a use of it, not injurious to the easement, will produce. *Williams* v. *Nelson*, 23 Pick. 141; *Paine* v. *Woods*, 108 Mass. 160; *Storm* v. *Manchaug Co.*, 13 Allen, 10. The close analogy between the class of cases to which we have referred and those of *State* v. *Pottmeyer*, *supra*, and *Edgerton* v. *Huff*, *supra*, is very readily perceived, and is strong proof that the latter cases are founded on solid principle, for no one doubts that the former are well grounded in principle.

There are well considered cases directly sustaining the view adopted by our decisions. In *Dodge* v. *Berry*, 26 Hun, 246, it was held that a mill-owner who has the right to flow the lands of another, does not own the ice which forms over the lands of such person, and that the latter may take the ice unless he perceptibly injures the owner of the mill. The same

conclusion was reached in *Marshall* v. *Peters*, 12 How. Pr. 218. The court in *Washington Ice Co.* v. *Shortall*, 101 Ill. 46 (40 Am. R. 196), held that ice belonged to the owner of the fee, and in the course of the opinion said: "The views we hold are in accordance with the holding in *The State* v. *Pottmeyer*, 33 Ind. 402, that when the water of a flowing stream running in its natural channel is congealed, the ice attached to the soil constitutes a part of the land, and belongs to the owner of the bed of the stream, and he has the right to prevent its removal." This doctrine is again held in *Village of Brooklyn* v. *Smith*, 104 Ill. 429 (44 Am. R. 90).

In *Paine* v. *Woods*, 108 Mass. 160, the court thus stated the law upon this subject: "The owner of the land thereby flowed must not indeed draw off by canals, aqueducts or ditches, the water which has been raised by the dam. *Cook* v. *Hull*, 3 Pick. 269; *Storm* v. *Manchaug Co.*, 13 Allen, 10. But he may use it for watering his cattle, or irrigating his crops and gardens, or any other reasonable purpose which does not practically and in a perceptible and substantial degree impair the right to run the mill; and so he may take and carry away the water when formed into ice, for use or sale, provided he does not thereby appreciably diminish the head of water at the dam of the mill-owner. *Cummings* v. *Barrett*, 10 Cush. 186. And his land may be of peculiar value by reason of its situation affording opportunities to do this. *Ham* v. *Salem*, 100 Mass. 350." These cases lend strong support to the doctrine which prevails in this court, and with the exception of the cases of *Mill River, etc., Co.* v. *Smith*, 34 Conn. 462, and *Myer* v. *Whitaker*, 5 Abbott N. C. 172, we have found none asserting a contrary doctrine. Of the latter case we need only say it is confessedly against the weight of authority, is condemned by the courts of the same State, is the decision of a single judge, and is not well reasoned. The decision in the first of these cases is that of a divided court, and the reasoning upon which it is founded is unsatisfactory. It proceeds thus: "Many of the mill ponds of the State, used in the grinding of grain and sawing of

timber, are small and shallow, and often in the winter season when rain falls infrequently and the fountains are frozen, water is scarce, and anything which further lessens it is a material injury." This seems to us a narrow view, and one not in harmony with authority or consistent with sound principle. It may possibly be that if the evidence in a particular case should show a diminution of the supply of water, the land-owner might then be prevented from taking ice; this, however, affords no ground for a broad general rule; the court has as little ground for presuming that taking the ice would diminish the supply of water, as for presuming that allowing a dozen, or a half dozen horses to drink from the pond would appreciably injure the owner of the easement. It is difficult, if not impossible, to reconcile the ruling in that case with the decision in the subsequent case of *Seeley* v. *Brush*, 35 Conn. 419; but, however this may be, we are clear that it is not a case which should be regarded as authority. It is a mistake to suppose that the case of *Higgins* v. *Kusterer*, 41 Mich. 318, S. C., 32 Am. R. 160, is against the views of this court, for nothing more is there decided than that parties may, by express contract, treat ice as personal property. It is said in that case that "there can be no doubt that the original title to the ice must be in the possessor of the water where it is formed;" and this is in harmony with our cases. In a later case in the same court, it was held that a riparian proprietor had a right to gather ice on a navigable river, and that the owners of a boat which carelessly destroyed it were liable. *People's Ice Co.* v. *Steamer "Excelsior,"* 44 Mich. 229, S. C., 38 Am. R. 246. The right of the riparian proprietor was likened to that of the owner of land adjoining a public road or street, and upon this basis was grounded his right to recover. This is the real foundation of our own cases, and they are, therefore, supported, indirectly, at least, by the one just cited. The case of *Wood* v. *Fowler*, 26 Kan. 682, S. C., 40 Am. R. 330, decides that where the stream is a navigable one, and the adjoining proprietor owns only to the bank, he has no superior claim to the ice;

but the court refers with approval to the cases which hold that where the riparian proprietor owns the land he also owns the ice.

Our conclusion is, that where the user is of such a character as to establish an easement to pond water on the land, or to use it as a water way for surplus water, the right to gather ice which forms on the pond is in the owner of the fee, and not in the owner of the dominant estate.

Judgment affirmed.

