Filed June 3, 1886.

106  573
128  122

106  573
133  164

106  573
154  224
155  481

No. 11,293.

## SHIRK ET AL. *v.* THE BOARD OF COMMISSIONERS OF CAR-ROLL COUNTY ET AL.

WABASH AND ERIE CANAL.—*Sale of.*—*Purchaser Took Subject to Easements of Public.*—The sale, in 1876, of the Wabash and Erie canal and its appurtenances, under a decree of foreclosure against the State, carried to the purchaser the fee simple therein, subject to the burden of any easement of the public of which he was bound to take notice.

SAME.—*Highway.*— *Bridge.*— *Notice of Easement.*—The continuous use by the public, for nearly forty years, as a part of a highway, of a bridge constructed by the State, having a wagon way for public travel and a towing path for navigators of the canal, was possession and notice of the easement.

SAME.—*Right of County to Use Material of Old Bridge in Rebuilding.*— The purchaser of the canal and appurtenances acquired no interest in the part of the bridge used by the public as a part of the highway but only in the part used for canal purposes, and, the bridge having been washed away subsequent to the sale, the county in which it was situate has the right to rebuild it upon its former location and to use the stone in the piers and abutments of the old bridge for that purpose.

From the Carroll Circuit Court.

*R. S. Taylor*, for appellants.

*L. B. Sims, J. R. Coffroth* and *T. A. Stuart*, for appellees.

ELLIOTT, J.—In 1841 a public highway was laid out through Carroll county. The line of this highway crossed the Wabash river at a point not far from the town of Carrollton, and since it was opened the highway has been continuously used by the public. In 1842 a dam was built by

the State across the Wabash river a short distance below the line of the highway, and the pond formed by this dam constituted a part of the Wabash and Erie Canal. This canal was constructed by the State under the Internal Improvement Acts passed some years before. During the years 1842 and 1843 a bridge was built across the river on the line of the highway; it was built on stone abutments and piers, the piers resting on submerged timbers. The superstructure was a wooden one, combining a wagon and carriage way and a towing-path bridge, for the towing horses of the canal; the towing-path part of the bridge was attached to the structure " as a narrow wing supported by cross-timbers extending under the other part of the bridge." The bridge was used for public travel and by the persons navigating the canal; the public used it in connection with the highway, and those navigating the canal used the towpath part to transfer the horses used in towing the boats across the river. Pursuant to the laws enacted by the Legislature, the canal and its appurtenances were pledged by the State to secure money borrowed by it. In 1873 the superstructure of the bridge was blown down and was replaced by the county of Carroll. The canal was abandoned in 1875, but the bridge continued to be used as a part of the highway until February, 1881, when the superstructure was carried away by the ice, leaving the stone piers and abutments standing. In 1880 the dam was destroyed, " and the water let out of the pond so that the timber foundations of the piers were left uncovered and exposed to the air and decay, and in order to restore the bridge to a safe and fit condition for public travel, it was necessary to take down the piers and replace them on other foundations." By virtue of a decree of the circuit court of the United States, rendered in 1874, the canal was sold in February, 1876, and from that sale the title of the appellants is derived.

The controversy in this case is as to the right of the com-

missioners of Carroll county to make use of the materials in the piers in rebuilding the bridge.

Our decisions establish the doctrine that the purchasers of the canal acquired such rights as the State had in the lands appropriated for canal purposes, and that the estate which the State acquired was a fee. These decisions, although they have been yielded to with reluctance, must be considered as declaring the law of the State. *Water Works Co., etc., v. Burkhart,* 41 Ind. 364; *Nelson v. Fleming,* 56 Ind. 310; *Cromie v. Board, etc.,* 71 Ind. 208; *City of Logansport v. Shirk,* 88 Ind. 563; *Brookville, etc., Co. v. Butler,* 91 Ind. 134 (46 Am. R. 580).

Upon the authority of these cases we affirm that the estate taken by the State in the lands appropriated for the canal was a fee, and that the appellants succeeded to that estate. But, while the appellants acquired all the estate of their remote grantor, the State of Indiana, in the canal and its appurtenances, they acquired nothing more. If the estate which they acquired was burdened with any charge or easement which was open to view and was one which the appellants were bound to take notice of, then it remains subject to that burden in their hands. It is not essential that a grantee should have actual knowledge of the burden, for it is a familiar doctrine, that one who has means of knowledge is presumed to have knowledge. This doctrine is often applied to easements, and the owner of the dominant estate, in a visible and open way across the land of another, can not be deprived of his rights although the servient estate may have been purchased by one who has no actual knowledge of the easement. The use of the bridge by the public as a part of the highway was equivalent to possession. Possession is notice, and here there was possession by the public. But, more than this, the construction of the bridge at the place where it was located, the manner of its construction, the necessity for its erection caused by the damming up of the water of the river, and the use to which it was devoted, combine with the actual

and long continued use for the purposes of public travel, to supply notice that the bridge was erected for a double purpose, to accommodate public travel, and to furnish facilities to enable navigators to use the canal. With these open and visible facts before them, the purchasers can not claim that they bought without notice of the right of the public to continue the use of the bridge for the purpose for which it was erected, and for which it had been used for nearly forty years.

We are quite as solicitous as counsel to maintain the honor and credit of the State, but we are unable to perceive that its honor or credit is impaired by the decision of the trial court, that the purchasers obtained what the State proposed to sell, and so we understand that decision. The State did not, either directly or indirectly, pledge or sell bridges erected to accommodate public travel, and this was one of the purposes for which the bridge involved in this controversy was erected. If it had been a highway bridge entirely disconnected with the canal, it could not, with the faintest tinge of plausibility, be argued that it passed with the conveyance of the canal, and in so far as the bridge was constructed as a part of the highway, it is not an appurtenance of the canal, but stands upon the same footing as if it had been simply a highway bridge. *St. Louis Bridge Co.* v. *Curtis*, 103 Ill. 410. It may be that the appellants acquired a right to have the bridge maintained so that it can be used for canal purposes, but, however this may be, they did not acquire a right to take part of the highway, and such the bridge was, in so far, at least, as it was erected for the purposes of public travel. The State professed to sell nothing more than the canal and its appurtenances, and nothing more was bargained for by the appellants. A bridge, or part of a bridge, erected for highway purposes, is no part of the canal, nor is it an appurtenance. The State had a right to build a bridge to accommodate public travel, and this right was exercised by constructing the bridge in controversy. The purpose for which the bridge was constructed has never been abandoned, for the use has

been continuous since 1841. The State built the bridge for highway purposes and has not sold or professed to sell the right to use the bridge for the purposes for which it was constructed, although it has sold the right to use the bridge for canal purposes. We suppose it to be undeniably true that there may be two interests in the same structure, and that one may be sold and the other retained. This is what was done by the State, for it held one interest in the bridge as part of the highway, and another as appurtenant to the canal; the one was sold, the other was not. The State was the original owner of the two interests; with one it has parted, the other it has retained. Leaving out of consideration the question of what rights, if any, have been lost by abandonment, it may, perhaps, be justly affirmed that the appellants have some interest in the bridge, but they have not in any event the whole interest, for that never went out of the State. They have, at all events, no such interest as will enable them to prevent the State, through its local instrumentality, the board of commissioners, from rebuilding the bridge and restoring the highway to its former condition. The State did not lose its right to the highway, whatever may be the result in other respects of the transfer of the canal. *City of Logansport* v. *Shirk, supra.*

We express no opinion upon the effect of the abandonment of the canal, nor do we undertake to precisely define the interest, if any, of the appellants, but we do hold that they can not prevent the county from rebuilding the bridge upon its former location, nor from using the stones in the piers and abutments for that purpose.

Judgment affirmed.

Filed March 11, 1886.

## ON PETITION FOR A REHEARING.

ELLIOTT, J.—A very able brief has been filed by the appellants' counsel on the petition for a rehearing, in which,

among other things, it is said: "I admit that the public easement in the highway which crossed the Wabash river at Carrollton was not destroyed by the construction of the canal, but continues to this day. I admit that the use of the highway was possession of the easement and notice to all the world. I admit that all such existing easements followed the canal into the hands of the purchasers under the Gapen decree. I have never controverted these propositions. My contention is, that the easement in the soil does not embrace the artificial stone structures placed on it as a part of the canal." In stating what his contention is, the learned counsel assumes, what we can not grant, that the bridge was part of the canal. This assumption lies at the foundation of the argument, and unless it can be made good the whole argument falls. The facts stated in the special finding, and recited in the agreed statement of facts, show that the bridge, except the addition made to it for towing purposes, was constructed as a part of the highway, and, therefore, counsel's assumption is utterly without support. The bridge was a part of the highway; as such it was built and maintained. Counsel admits, what could not well be denied, that the possession and use by the State was notice to all the world, and the logical conclusion from this admission, which no ingenuity of invention however great can escape, is, that the purchasers of the canal knew that the bridge was part of the highway and not part of the canal. If, therefore, the State had an interest in the bridge distinct from that owned for canal purposes, it still retains it, for the appellants knew that the highway bridge was no part of the canal, and the decree, on which their title is founded, orders a sale of the canal, and no other property is embraced by its terms or is within its scope.

The agreed statement of facts filed as part of the evidence thus states what property was sold, under the decree, to wit: " That part of said canal lying between the Ohio State line and the western boundary of the city of Lafayette." If

the appellants' grantor bought the canal, as it is agreed he did, we can perceive no possible ground upon which it can be claimed with even the feeblest appearance of justice, that he got a highway bridge forming no part of the canal. If the purchasers of the various canals constructed under the Internal Improvement laws of the State obtained, by virtue of their purchase under the decrees directing a sale of the canal property, title to all the highways and highway bridges that crossed those canals, then we are wrong in our conclusion; but if, as we believe to be undeniably true, they bought only the canals and their appurtenances, then our conclusion is right. We confess that we are unable to perceive how it is possible for the appellants to wrest from the people of the State property that was not sold.

It is covertly assumed by counsel that we constructed our opinion upon the theory that " an easement in the soil embraced the artificial stone structure placed on it as a part of the canal," but counsel is greatly in error. We expressly declared that the bridge, so far as it was built for highway purposes, was not a part of the canal, so that there is a palpable fallacy in assuming that we conceded it to be a part of the canal. Our proposition was, and is, that the bridge, in so far as it was a part of the highway, is not a part of the canal, and as the appellants bought only the canal they did not acquire title to any other property owned by the State. It seemed clear to us on the oral argument, and continued reflection has, if possible, made it still clearer to our minds, that the appellants have rightful title to the property sold under the decree, and to nothing more, and that is, the canal and its appurtenances.

The question here is, what is the extent and nature of the appellants' title? That title surely is no greater than was sold under the decree upon which the claim of title rests. We can not go behind that decree to ascertain what interest or estate might have been ordered sold, but our inquiry ends when we ascertain what property was sold. The State courts can neither review nor impair the decrees of the Federal tribu-

nals, but must enforce them as they are written. With quite as much reason might the State ask us to decide that too great an interest was directed to be sold, as for the appellant to ask us to determine that more ought to have been sold. It is a familiar principle that a decree, directing the sale of property mortgaged or otherwise pledged as a security for a debt, settles the estate which shall be sold, and we must presume that the United States officers did their duty, and sold what the decree authorized them to sell. At all events, we must, where the record shows, as it does here, what property the appellant bought, decide that we can not inquire into what lies back of the decree and sale, for the purpose of ascertaining whether there is or is not some equitable grounds for giving the appellant more than he bought.

The decision in *City of Logansport* v. *Shirk, supra,* goes much further than we need do here, for it declares, and rightly, that the easement of the public in highways simply remained in abeyance during the time the canal was in use, but revived when the use ceased. If, as we must do, we apply that principle here, it results that when the canal was abandoned the right of the people to the highway bridge fully revived. Nor is there any injustice in applying this principle where it is expressly admitted, as it is here, that the use and enjoyment of the bridge for highway purposes was " notice to all the world."

Petition overruled.

Filed June 1, 1886.