WILLIAM TAYLOR, Appellant, *v.* ELBERT MARCY, Appellee.

APPEAL FROM KENDALL.

Where a road, after its survey and location, has not been opened for the use of the public, nor the proper notice given the owner of the land to remove his fence, neither the commissioners or any other person can remove a fence without becoming trespassers.

If parties over whose land a road has been laid, having notice, real or constructive, fail to claim damages at the appropriate time, they will afterwards be estopped.

WILLIAM TAYLOR, on the 7th day of September, 1855, filed in Kendall Circuit Court a declaration in trespass *quare clausum fregit.*

Pleas—First, not guilty; second, a public highway; third, quit claim to public for highway from owners of land; fourth, setting forth the proceedings for a highway.

Replication to the county *de injuria.*

Trial had, and verdict for defendant, HOLLISTER, Judge, presiding. Motion for a new trial overruled; appeal taken.

The proof shows that in June, 1855, defendant pulled down plaintiff's fence and in two places; three or four pannels of fence pulled down at each place; panels made of boards fourteen or sixteen feet, making a space at each place, where it was pulled down of three or four rods each; some of the boards were badly split up and nearly destroyed, and were thrown over a ditch fence; from that, the damage was at least fifty cents.

That the places where said fences were pulled down was in Kendall county, Illinois.

Defendant said he had pulled it down because it was in the road; that he threw boards over the fence where they then were, and if they were put up again he would make oven-wood of them.

*William Ryan* testified, that the premises where said fences were pulled down then belonged to plaintiff, and plaintiff was then in possession of same, and that plaintiff purchased the same in the fall of 1854.

That there had been a time some years previous when Samuel Jenkins lived upon the premises which plaintiff purchased, but who has since deceased—that said decedent, Samuel Jenkins, wanted a road where said fences were pulled down and said Jenkins built his fences with reference to that road.

That the place where said road was intended to be laid out, and which, at the time of the trespass being committed, had been fenced out by Samuel Jenkins in his lifetime, with reference to a road being laid out there, the same had been aban-

doned before Taylor purchased the same. That he cut wheat right at the place where the trespass was committed, the summer before the plaintiff purchased the same ; that he never knew of any road labor being put upon said road. That at the time of the trespass being committed, all the fields were in one common field ; that there was no road fenced out and traveled and used as a public road within a half a mile or more of the place where the trespass was committed, without there being a gate at each end of the road.

The plaintiff then offered his deeds of said premises in evidence, which were testified to by witness Ryan, as conveying the lands where said trespass was committed, and the same were permitted to be read to the jury.

The defendant then offered in evidence : First, petitions for a road ; second, order of the commissioners of highways, and survey, and release of damages ; third, appeal and decisions of supervisors ; all of which, except release of damages, were admitted by the court.

He also produced the original release of damages, and proved that the signatures of Henry Jenkins, Celestia Jenkins, and William Scott, were genuine, and offered the same in evidence.

The defendant also produced *Henry Jenkins,* who said he was son of Samuel Jenkins, deceased ; that the land on the north side of the road, marked upon the plat of the branch road, belonged to Samuel Jenkins' estate at the time of laying out said road ; that the land, a part of the way on the south side of said branch road, belonged to defendant, as is shown by said plat ; that witness was administrator, and Celestia Jenkins was administratrix, of Samuel Jenkins' estate at the time of laying out said road and branch road ; that Samuel Jenkins left a widow and four children,—Celestia was his widow, and Henry, John and Thomas Jenkins, and Jane Scott, who married William Scott, were his only children ; that Samuel Jenkins died without making will ; that witness purchased the interest of Thomas Jenkins in said estate, and William Scott purchased of John Jenkins, in said Jenkins' estate ; that the purchase from John and Thomas Jenkins was after the signing of the release by said Celestia and Henry Jenkins, and William Scott ; that William Scott and witness sold and conveyed to William Taylor, in winter or spring after road was laid out ; that Thomas and John Jenkins were not in the State when road was laid out ; that witness and Celestia Jenkins were in possession of the Jenkins' estate when road was laid out ; that the fence was pulled down near where the branch road opened into main road ; that the fence stood about eight feet into the main road ; that Samuel Jenkins at one time intended to have a branch road, and had built sod fences with

reference to the same; that people sometimes, when coming through the fields, traveled on said branch road, and sometimes traveled in other places; that at the time plaintiff Taylor got possession of land, it was winter, and fences were down where the branch road opens into main road; that there had been a fence there before, but it was down when Taylor got possession; that main road had a gate opposite Andrew Scott's, and a gate or two on the other side of plaintiff's premises. That he did not know where the line of the main road was; that he did not see lines run, and never knew where the line of the road was; that it was only his opinion that the fence stood eight feet in the road.

The jury found a verdict for defendant; whereupon the plaintiff moved the court for a new trial, for the following reasons:

The court erred in receiving the defendant's testimony in relation to laying out said road, particularly the report of the commissioners of highways.

The court erred in giving defendant's instructions.

The verdict is against the law and evidence.

This case was presented to the court at a previous term, and will be found reported on page 634, volume 19, of these Reports.

HELM & SMITH, for Appellant.

LELAND & LELAND, for Appellee.

WALKER, J. After examining the bill of exceptions now before us, we find that it differs materially from the bill of exceptions in the case when it was formerly in this court. And the additional facts which now appear, as we think, present other and different questions, not then discussed. To their consideration we shall now address ourselves. On the former trial, it did not appear, as it does in this, that what is denominated the main road, had not been open for travel at the time of the removal of the obstruction. It now appears, that it was within enclosures and was obstructed by gates, both north and south of the place where the fence was removed. It further appears, that this road had not been worked or repaired by the public authorities, except that a slough had been bridged in the summer of 1855, opposite the house of the path master, for his own convenience. On the former hearing in this court, nothing in the record showed that this was not an open, public, traveled highway, and that the fence removed by plaintiff in error, had not been wrongfully erected, and which therefore he had the right to remove.

Then as this road had not, after its survey and location, been opened by the proper town authorities, for the use of the public, had the defendant in error, unauthorized by them, the right to remove this fence, even if it was in the line of the road? Assuming that all the steps required by the statute had been taken, essential to the survey and location of the road, still the 24th section of article 24 of the division entitled " Counties," (Scates' Comp. 354) provides, that when a public highway shall be laid out through any enclosed, cultivated or improved lands, the owner shall have sixty days' notice in writing, to remove his fences, and upon a failure to do so within that time, the commissioners are required to cause such fences to be removed, and to direct the road to be worked. There is no pretense that any such notice was ever given in this case. It appears from the evidence, that the branch road was also enclosed at the time of its location, and for the want of such a notice, even had every other step been taken, the commissioners had no authority to remove this fence, let it have been in the one road or the other. Nor could any other person, except the owner or those acting under him, have rightfully removed this fence, and others in doing so, became trespassers.

It is, however, urged, that Samuel Jenkins at one time, some years previous to his death, dedicated the branch road to the public as a highway. It appears that at one time he did want a road at the place where the branch road was afterwards surveyed and located, and in fencing his adjoining land, did so with reference to such a desire. William Ryan was one of the witnesses who testified to these facts, and to the further fact that the design had been abandoned before plaintiff in error purchased the land, and that the ground claimed as the branch road had been in cultivation, and that he had cut wheat on the ground in the year 1853, at the place where the fence was pulled down, which occurred in 1855. Plaintiff in error purchased the land in 1854, of William Scott and Henry Jenkins. In December of 1852, a petition for the survey and location of these roads was presented to the commissioners of highways, by a number of the citizens of the neighborhood, and of the number was defendant in error. It also appears, that whilst this branch road was enclosed, that persons passing sometimes traveled on what is claimed as the road, and at other times in different places. Nor is there any evidence that the public ever repaired this road, or that it required no labor for its repair. From all of these facts it is apparent, that if Samuel Jenkins made the dedication, that those most likely to know the fact were not aware of it, or they knew it had been revoked before the public had accepted of the dedication. Those in the imme-

diate vicinity, did not regard the public as having any such right, or they would not have signed the petition.

As defendant in error had as great an interest in the use of this road as any other person, he would be more likely to be informed; and he could not have regarded it as a public highway, or he would not have joined in the petition. The evidence as it now appears in this record, we think wholly fails to establish a dedication to, and an acceptance by the public. If it establishes anything, it is only that Samuel Jenkins at one time designed to have a road at this place, and fenced his land with that view; but that his purpose was never consummated. Whether he designed that it should be a public or private way does not appear.

As regards the question of damages not having been assessed to John and Thomas Jenkins, if the road was located over any portion of their land, which does not appear, it is enough to say that the requisite statutory notice was given. If they claimed damages, they should have appeared and made it known to the commissioners, at or before the time when the road was located, or it may be to the supervisors trying the appeal. They had the constructive notice required, and having failed to present their claim, they must be estopped afterwards to assert it. Nor can their assignees be heard to insist upon the claim, as it was not presented in proper time. *Ferris* v. *Ward*, 4 Gilm. 499; *County of Sangamon* v. *Brown et al.*, 13 Ill. 207.

The court below erred in not granting a new trial, as the evidence fails to support the verdict. The judgment is therefore reversed, and the cause remanded.

*Judgment reversed.*