## NELSON ET AL. *v.* FLEMING.

CANAL.—*Wabash and Erie Canal.—Real Estate, Appropriation of.—Easement.
—Title Acquired by the State.*—Where, under the provisions of section 9
of "An act supplemental to an act, providing means for the construction
of the Wabash and Erie Canal," approved January 9th, 1832, (Acts 1832,
p. 1,) the board of commissioners of such canal, or their agents, prior to
the 27th day of January, 1836, entered upon, took possession of, and ap-
propriated real estate necessary for the construction of such canal, the
State of Indiana thereby acquired, not merely an easement in such real
estate, but a title thereto in fee-simple.

SAME.—*Action to Quiet Title.—Pleading.—Assessment of Damages.—Limita-
tion. — Statutes Construed. — Waiver. — Presumption.*—In an action by a
grantee of the State of Indiana of such canal, to quiet his title to cer-
tain real estate, alleged to have been appropriated under the provisions
of such act, the complaint averred, "that, in the course of the construc-
tion of said canal, the State of Indiana, in the exercise of her power
of eminent domain, through the agency of her proper officers and in the
manner directed by law, appropriated said land, * * to be used in
the construction of said canal, and constructed said canal upon and
across the same, * * prior to the 27th day of January, 1836 ; * *
that no record was kept of such appropriation, or of the quantity or lo-
cation of the land appropriated, or, if any was kept, it has been lost or
destroyed, and can not now be found, or the contents of it ascertained."

*Held*, on demurrer, that the "appropriation" of such real estate, authorized
by such act, is sufficiently averred, and was completed by so entering
upon and using it for the purposes of such canal.

*Held*, also, that, under such act, the assessment of damages in favor of the
owner, for taking his real estate, was to be made after such "appropria-
tion."

*Held*, also, that, under section 4 of the "act to provide for the further pros-
ecution of" such canal, (Acts 1835, p. 25,) approved February 6th, 1835,
the owner must have made his application for such assessment within
two years after such "appropriation," or, if that time had expired before
the approval of such act, then, within two years thereafter.

*Held*, also, that, if he failed within such time to apply for such assessment,
he waived his right thereto, and the title to such real estate vested in
the State in fee-simple, as fully as if such assessment had been made
and paid.

QUERY.—Forty years having elapsed since such appropriation was made,
may it not be presumed that such assessment had been made and paid ?

SAME.—*Possession under Color of Title.—Conveyance.—Presumption.*—Where,
in such case, the complaint alleges such real estate to have been in the
peaceable possession of the State and her grantees, under color of title,

for forty years, it may be presumed that the same had been duly conveyed to the State in fee-simple, by the owner.

SAME.—*Statute Construed.—Canal Basin.*—Section 9 of such act of January 9th, 1832, authorized the appropriation of real estate lying along such canal, necessary for a wharf or basin.

BIDDLE, J., dissented.

From the Allen Circuit Court.

*S. L. Morris,* for appellants.

*R. S. Taylor, W. H. Coombs, J. Morris* and *R. C. Bell,* for appellee.

WORDEN, J.—Complaint by the appellee, against the appellant, to quiet the plaintiff's title to certain real estate.

Demurrer to the complaint, for want of sufficient facts, overruled, and exception. The defendants declining to answer, judgment was rendered for the plaintiff, quieting his title.

Exception to the judgment. Appeal.

The complaint alleges, that the appellee is the owner of the Wabash and Erie Canal, including its banks, margins, etc, from the western boundary of the city of Lafayette eastward to the Ohio State line. It then sets forth the manner in which he acquired his alleged title, in substance, as follows:

First. It alleges that the title was, before the sale thereof, in the State, in fee.

Second. The transfer of the canal and its appurtenances, pursuant to the acts of the Legislature of 1846 and 1847, by the State to the board of trustees of said canal, for the benefit of the creditors, and holders of the stock in said canal, and for the completion of the same to Evansville.

Third. That on the 19th of November, 1875, one Jonathan K. Gapen filed his bill in chancery, on his own behalf and on behalf of all others interested, in the Circuit Court of the United States for the district of Indiana, alleging that he was a citizen of the State of New York,

and that the said board of trustees was a corporation created by, and existing in, the State of Indiana; that he was the owner of five hundred and seventy-five thousand six hundred and six dollars of canal stocks, issued under said acts of 1846 and 1847, and embraced within the trust created by the conveyance of said canal to said board of trustees. That the holders of said stocks were numerous, and scattered over the whole world; that no interest or principal had been paid on said stocks; that said canal was so out of repair as to be unfit for navigation; that said board of trustees had no means with which to repair or keep up the same; that said trust was insolvent; that the trust property was rapidly decaying and going to waste and ruin; that, for these and other reasons, the further execution of the trust had become impossible, and that the holders of said stocks could never realize any thing from said trust, unless the same should be wound up, and the trust property sold; and praying that an account be taken of the condition of said trust; that the court take charge of the same, and order a sale of said canal and its appurtenances, and the division of the proceeds among the stockholders.

Fourth. That said board of trustees, on the 5th day of April, 1875, filed an answer to said bill, and that on the 2d day of July, 1875, said Gapen filed his reply to said answer.

Fifth. That on the 17th day of July, 1875, said cause came on for hearing in said court. That it was adjudged by said court, that said Gapen was entitled to the relief prayed for in his bill, and that Charles Butler, Thomas Dowling and James S. Hinton be appointed trustees to hold and administer said trust property, under the direction of the court, and that Samuel B. Gookins be appointed a special commissioner in chancery to take an account of said trust property, and report the same to the court.

Sixth. That, on the 24th day of December, 1875, said

cause came on to be further heard, and said Gookins and others filed their report of the condition of said trust, with their recommendation as ordered; that said report was approved by the court, and it was ordered and adjudged that the Wabash and Erie Canal, including its banks, margins, tow-paths, side-cuts, feeders, basins, rights of way, dams, water-powers and structures, together with all its appurtenances, be sold; that all that part of the main line of said canal, extending from the western boundary of the city of Lafayette eastward to the Ohio State line, be offered in a body at public sale, and if a satisfactory bid be not made for the same, then to be sold in sections; that said sale be made by Gookins, as such special master in chancery, and Thomas Dowling, resident trustee, at the court-house in Terre Haute, in the State of Indiana, after due notice, etc.

Seventh. That said Gookins and Dowling, after giving due notice as required, on the 24th day of February, 1876, at the court-house door, in the city of Terre Haute, sold to Jonathan K. Gapen, at public auction, that part of said canal lying between the western boundary of the city of Lafayette and the Ohio State line, together with all the appurtenances thereto belonging, as in said decree described, for the sum of eighty-five thousand five hundred dollars. That said sale was duly reported to said court, and was by said court duly ratified and confirmed. That said Gapen represented to said court that he had sold and assigned his said bid and interest in said portion of said canal to the appellee, who appeared in said court and assented thereto, as did also said master and trustee, and thereupon the appellee was, by the order of the said court, substituted for said Gapen, as the purchaser of said portion of said canal and its appurtenances.

Eighth. That said appellee, having complied with the terms of said sale, the said Gookins and Dowling reported to said court a deed, duly executed by them, conveying to said appellee, William Fleming, said portion of said canal

and its appurtenances, which deed was duly approved by the court and delivered to said Fleming.

Ninth. The complaint then avers, that, by virtue of said proceedings and deed, the appellee became the owner in fee of that portion of the canal lying between · the western boundary of the city of Lafayette. and the Ohio State line, together with its banks, margins, basins, tow-paths, side-cuts, feeders, locks, dams, water-powers and structures, and the lots used as sites for water-powers, and all franchises of said canal and appurtenances thereto belonging.

Tenth. That to a portion of the canal and its appurtenances so belonging to him, the appellants claim to have some right or title adverse. to him, giving a specific description of the same.

Eleventh. As to the land thus adversely claimed, it is averred in the complaint, that, before the appropriation thereof by the State, the same belonged to William Rockhill; that, in the course of the construction of said canal, the State, in the exercise of her power of eminent domain, through the agency of her proper officers and in the manner directed by law, appropriated said land to be used in the construction of said canal, and constructed said canal upon and across the same; that said appropriation was made and said canal constructed on and across said land, and through said county of Allen, prior to the 27th day of January, 1836, and subsequent to the 9th day of January, 1832, and under the laws in force between those dates; that, in the construction of said canal, the tow-path was located next to the north line of the same, and the channel and water-way next adjoining the tow-path on the south, leaving a margin twenty-four feet wide, from the water edge to the south line of the tract appropriated, as above described; that said channel and tow-path were so located for the purpose of using said margin on the south side as a wharf, or excavating the same so as to constitute a basin, as the wants of the canal might re-

quire. That no record was made or kept of said appropriation, or of the quantity or location of the land appropriated, or, if any was made, the same has been lost or destroyed, and can not now be found, or the contents of it ascertained. That after said appropriation was made and said canal constructed, to wit, on the 19th of April, 1839, the said Rockhill, being owner of the land on each side of said canal, laid out and recorded a plat of town lots, upon which plat the said land so appropriated and above described was marked and designated as " Canal Basin." That the board of trustees of said canal, immediately upon the execution of the conveyance to it, by the State, of the canal, took possession of the same, and the land herein described, as parcel of and appurtenant to the same, and continued from thence until the sale to the appellee, peaceably and under color of title, to hold and use all of said land, etc.

Twelfth. The death of said Rockhill is alleged, and that his interest in said lands is now owned by the appellants. That they have given it out in speeches and otherwise that they have some right to the land appropriated for said canal as herein alleged. That the Circuit Court of the United States had no jurisdiction of the proceedings for the sale of said canal, etc.

The prayer is, that the title of the plaintiff below be quieted, etc.

It seems to be clear enough that whatever title the State had in the canal and its appurtenances, which passed to the board of trustees of the canal, passed also to the appellee, by virtue of his purchase under the decree of the Circuit Court of the United States, and the conveyance to him in pursuance thereof.

The main question, therefore, to be determined, is, whether the State held the fee in the lands received, or appropriated by her to the use of the canal, or only a mere easement therein.

The 9th section of the act of January 9th, 1832, " sup-

plemental to an act, providing means for the construction of the Wabash and Erie Canal," (Acts 1832, p. 1,) provides as follows:

" That it shall and may be lawful for said canal commissioners, or each of them, or any of their agents, superintendents, engineers, or workmen acting under them, to enter upon and take possession of, and use all and singular, any lands, waters, streams and timber, stone or materials of any kind, necessary for the prosecution of the improvements contemplated by this act; and to make all such canals, feeders, dykes, locks, dams, and other works, as they may think proper in said prosecution, doing however no unnecessary damage: and the said canal commissioners are hereby authorized to receive on behalf of the State, from the owners of any such lands, such grants and conveyances as may be proper and competent to vest a good title thereof in the State, and also to receive grants of such materials as they may need: and in case any lands, waters, streams or minerals, taken and appropriated for any of the purposes aforesaid, shall not be given or granted to this State, or in case the owner or owners thereof shall be *feme covert*, under age, *non compos*, or out of the State or county, on application of said canal commissioners or either of them, to any justice of the peace of the county in which such lands be, the said justice shall issue his warrant to the sheriff of the county, to summon a jury of twelve inhabitants of the county, not related to the parties, nor in any manner interested, to meet on the land, or where the materials are to be valued, at a day stated in said warrant, not less than ten nor more than thirty days thereafter, and by public notice to be inserted in the nearest public newspaper to the place of trial, call upon the owner or owners of the materials; by name if known, if not, the unknown owner or owners to attend at said time and place, if he, she, or they may think proper: which warrant the sheriff shall execute; and when met, the said jury shall be

sworn by said sheriff, faithfully, justly and impartially to estimate the loss or damage, if any, over and above the benefit accruing from the canal to such owner, in said premises or materials; and the inquisition thereupon taken, being signed by said jury, and certified by such sheriff, shall by him be returned to the clerk of the county in which said trial may be had; and unless good cause be shewn against said inquisition, it shall be affirmed and recorded by the circuit court of said county, at the first term thereof; but if said inquisition be set aside, or the same be not returned to the court at the first term, the court may as often as necessary, direct another inquisition, to be taken in manner as above prescribed; and upon the payment by the said canal commissioners of the damage so assessed by said inquisition, (which valuation shall be conclusive on all persons) which said commissioners are hereby directed to make, the fee-simple of the premises, or the right of such water, stream or materials, shall be vested in the State," etc.

It will be seen by the statutory provision above set out, that the State contemplated receiving such grants and conveyances of land as would "vest a good title thereof in the State," and that where lands were "taken and appropriated," the fee-simple of the premises should vest in the State.

It seems clear, therefore, that where the State acquired the property, either by conveyance or appropriation, the fee vested in the State.

In the case of *Edgerton* v. *Huff*, 26 Ind. 35, it was assumed and conceded, that where the State appropriated land for the use of the canal, prior to the act of January 27th, 1836, the State acquired a title in fee. But it was decided in that case, that where land was appropriated under the provisions of the last named act, the State acquired only an easement in the land. But in the later case of *The Water Works Co. of Indianapolis* v. *Burkhart*, 41 Ind. 364, where the question was ably and elaborately

examined by OSBORN J., it was held, that where the State appropriated land for the use of the canal, after the passage of the act of January 27th, 1836, taking into consideration the whole of the statutes on the subject, the State took the fee in the land appropriated.

In the case before us, we need not and do not determine what would have been the effect of the appropriation had it been made after the taking effect of the act of January 27th, 1836, as the appropriation appears to have been made before that time.

In view of the plain and unmistakable language of the statute above set out, and of the decisions already referred to, we shall not enter upon any extended examination of the question. We take it as settled, that the appropriation vested the fee of the land in the State.

But a question arises as to whether the complaint sufficiently shows an appropriation. The language of the complaint in that respect is as follows:

"In respect to which lands the plaintiff says, that before the appropriation thereof by the State of Indiana, as hereinafter stated, the same belonged to William Rockhill; that in the course of the construction of said canal, the State of Indiana, in the exercise of her power of eminent domain, through the agency of her proper officers, and in the manner directed by law, appropriated said land, above described, to be used in the construction of said canal, and constructed said canal upon and across the same, * * * that no record was kept of said appropriation, or of the quantity or location of the land appropriated, or, if any was kept, it has been lost or destroyed, and can not now be found, or the contents of it ascertained."

It does not appear from the allegations of the complaint, that any damages were ever assessed in favor of, or paid to, Mr. Rockhill, in consequence of the appropriation of his land.

By the 9th section of the statute above set out, the

canal commissioners were authorized " to enter upon and take possession of, and use all and singular, any lands, waters, streams and timber, stone or materials of any kind, necessary for the prosecution of the improvements contemplated by this act; and to make all such canals, feeders, dykes, locks, dams, and other works, as they may think proper in said prosecution, doing however no unnecessary damage." The section then goes on to provide for taking conveyances from the land-owners; and that where lands, etc., thus appropriated shall not be conveyed, or where the owners are under disabilities, the commissioners are authorized to proceed, as provided for, to have the damages assessed; and when the damages are assessed and paid, the title to the land is to vest in the State in fee. No particular formality was required in making the appropriation, and no record of it was required to be kept. The appropriation was made by entering upon the land and using it for the purposes indicated. The proceedings to assess damages were to be had after the appropriation.

The appropriation is sufficiently alleged in the complaint; but the further question arises whether the complaint should have shown that any damages were ever assessed in favor of, and paid to, Mr. Rockhill. The statute above set out does not seem to provide for the land-owners' taking the initiative in procuring an assessment of damages. It was the duty of the canal commissioners to do this, upon the land being appropriated; and perhaps it may be presumed, after the lapse of forty years, that the damages, if any, were duly assessed and paid. But this point is suggested only and not decided.

The 4th section of the act of February 6th, 1835, " to provide for the further prosecution of the Wabash and Erie Canal," etc., (Acts 1835, p. 25,) is as follows:

" In all cases where application for damages growing out of the construction of the Wabash and Erie Canal, or the works connected therewith, have been made, or

shall be made, for any lands, timber or stone, or other materials, which may have been taken for the location or construction of said canal under the provisions of the laws of this State; or for any lands, timber, stone, or other materials, which may be taken under authority of laws in force, for the location or completion of said canal, or any of the structures thereto appertaining, it shall be the duty of the board of canal commissioners, to file all such applications as have been or shall be presented in writing, and to submit them to the board of appraisers (hereinafter provided for) at their annual meeting; whereupon it shall be the duty of said board of appraisers, or a majority of them, to examine the premises, hear such evidence as shall be adduced relevant thereto, and make an equitable assessment of the damage (if any) which the respective claimants may have sustained, over and above the benefits conferred by the construction; and the said appraisers shall make regular entries of their award in each particular case, with a description of their premises, in a book to be provided and kept by the canal commissioners, and shall sign their names thereto, and when thus certified, it shall be the duty of the canal commissioners to pay the several awards to the individuals respectively, which shall vest the fee simple of the premises so appropriated in this State; *Provided however,* That no claims for damages shall be referred to the board of appraisers, unless the written application be made within two years after the materials shall have been taken possession of as aforesaid."

It is seen by the above provision, that the right of the land-owner, whose land has been appropriated, to file his application for damages, is recognized, and that this must be done within two years from the time the property has been appropriated, or the possession thereof taken.

This statute may be regarded as a limitation of the time within which applications for damages must be made. Probably where the two years had expired before the passage of the law, parties would have had the whole

two years after its passage in which to file their applications. *The State, ex rel., etc., v. Clark,* 7 Ind. 468.

We think that where a party whose land had been appropriated to the use of the canal failed to file his application for damages within the time thus limited, he must be regarded as having waived any claim for damages, and that upon the lapse of the time limited, no such claim for damages having been filed, the title to the land appropriated vested in the State as thoroughly and completely as if damages had been assessed and paid.

This view is sustained by the following authorities: *The Charlestown Branch R. R. Co. v. County Commissioners,* 7 Met. 78; *Rexford v. Knight,* 11 N. Y. 308; *Pittsburgh v. Scott,* 1 Pa. State, 309; *Taylor v. Marcy,* 25 Ill. 518; *Cupp v. The Board of Commissioners of Seneca County,* 19 Ohio State, 173; *Reckner v. Warner,* 22 Ohio State, 275; *Shearer v. Commissioners of Douglas County,* 13 Kan. 145.

The allegations of the complaint were, in our opinion, sufficient to show title in the plaintiff, without any averment that any damages had ever been assessed or paid.

There is another view which may also be taken of the case. It is alleged that the board of trustees of the canal, immediately upon the execution of the conveyance to it, by the State, of the canal, took possession of the same and the land herein described as parcel of and appurtenant to the same, and continued from thence until the sale to the appellee, peaceably and under color of title, thus to hold and use all of said land, etc.

Thus, for the period of about forty years, the State and those claiming under her have been in the peaceable possession of the property under color of title.

It will be seen by recurring to the 9th section of the statute hereinbefore set out, that the canal commissioners were authorized to receive, on behalf of the State, from the owners of lands appropriated, "such grants and con-

veyances as may be proper and competent to vest a good title thereof in the State."

Under these circumstances, we think it may well be presumed, as matter of fact, that the proper conveyance had been executed, so as to vest the title in the State. *Jackson* v. *M' Call,* 10 Johns. 377; *Newman* v. *Studley,* 5 Mo. 291; *McNair* v. *Hunt,* 5 Mo. 300; *White* v. *Loring,* 24 Pick. 319; *Proprietors of the Church, etc.,* v. *Bullard,* 2 Met. 363.

It is, however, especially objected, that the appellee's title to the margin of twenty-four feet, appropriated to be used as a wharf, or to be excavated and used as a basin, as the wants of the canal might require, can not be good.

The language of section 9, heretofore set out, is clearly broad enough to authorize an appropriation of land for the purpose indicated.

There is no error in the record.

The judgment below is affirmed, with costs.

BIDDLE, J., dissenting, delivered the following opinion:

As to so much of the opinion of the court in this case as holds that the appellee takes a title in fee-simple in the bed of the canal and its appurtenances, I dissent from my learned brothers.

The right of eminent domain is inherent in the state sovereignty. It is not granted by the constitution. It rests upon public necessity, and has no other foundation. It can be exercised only when demanded by the public safety or general welfare, and then only according to expressed law. The right under which it is exercised, and the acts prescribing the manner of its exercise, must be strictly construed. It can not be exercised, either directly or indirectly, for the benefit of private right. See Cooley Const. Lim., pp. 523–571, and authorities there cited.

A fee-simple in lands can be taken, against the will of the owner, by the State, only in cases of public necessity, and then only when the law authorizes it, and when com-

pensation is made to the owner for the full value of his property, and when the entire and exclusive title is taken from the owner, as in the cases of public forts, hospitals, alms-houses, colleges, schools, parks, where the exercise of the right is inconsistent with any remaining title in the owner; and in such cases there is no reversion. *Heyward* v. *The Mayor, etc.,* 7 N. Y. 314; *The Brooklyn Park Comm'rs* v. *Armstrong,* 45 N. Y. 234; *Dingley* v. *City of Boston,* 100 Mass. 544; *Haldeman* v. *The Pennsylvania Central R. R. Co.,* 50 Pa. State, 425.

When land is taken, against the will of the owner, for the purposes of a mere easement, as a highway, public street, railroad or canal, and he is paid only for the easement, the State can take no more than the easement, although the law under which the title is taken declares that it shall be a fee-simple. Lands were taken in the State of New York, under the act of 1819, which expressly declared that a title in fee-simple should vest in the State, for the construction of the Erie Canal, and which was used as a canal till 1842 and then abandoned; and it was held, that the lands so taken, when no longer necessary for the public use, reverted to the original owners. *The People* v. *White,* 11 Barb. 26. The same doctrine has been held in reference to turnpikes and railroads.

In the case of *Giesy* v. *The Cincinnati, etc., R. R. Co.,* 4 Ohio State, 308, which involved the question of taking ground for a depot, it was decided that only such interests as answered the public wants could be taken, and could be held only so long as it is used by the public, and can not be diverted to any other purpose.

In the State of New Hampshire, it is held, that the fee in land, taken for the purpose of constructing a railroad, remains in the owner of the soil from whom the land is taken, subject only to the easement of the corporation, and that the exclusive right of property in the land, in the trees and herbage on the surface, and the minerals below, remained unchanged. *Blake* v. *Rich,* 34 N. H. 282.

In Vermont, the act under which the Central Railroad was established declared, that the company shall be "seized and possessed of the land" taken, yet the Supreme Court held, that it did not make the company the owner in fee, but gave it the right of way, merely. *Quimbly* v. *Vermont Central R. R. Co.*, 23 Vermont, 387. To the same effect is the case of *Henry* v. *The Dubuque, etc., R. R. Co.*, 2 Iowa, 288. See, also, *The People, ex rel. The Detroit, etc., R. R. Co.*, v. *Salem*, 20 Mich. 452.

In the case of *Edgerton* v. *Huff*, 26 Ind. 35, this court declared, that " The power to appropriate property in any manner, without the consent of the owner, is in derogation of private right, and such appropriation should not interfere, beyond what the public requirements demand, with the right of the owner to enjoy his property. Where, therefore, a simple servitude is sufficient to answer the public want, the courts should, in our opinion, where it is possible by reasonable construction, so limit the legislative action." And, in accordance with this announced principle, the court held, that the right of the State to the bed of the Wabash and Erie Canal, and its appurtenances, was merely an easement, and not a fee-simple. This case is cited with approval in *The State* v. *Bush*, 29 Ind. 110, and *O'Reiley* v. *The Kankakee Valley Draining Co.*, 32 Ind. 169; in which last case this court holds, that the right of eminent domain can only be exercised for a public purpose. "Under this power, lands for the construction of canals, railroads, bridges, and turnpikes are taken and compensation paid. The necessity must limit the exercise of the power so far as to require that no greater estate be taken in the land than is essential to the purpose contemplated." The decision in the case of *The State* v. *Pottmeyer*, 33 Ind. 402, is mainly based on *Edgerton* v. *Huff, supra*. But I am aware that the latter case is overruled by the case of *The Water Works Co., etc.*, v. *Burkhart*, 41 Ind. 364, and, of course, *The State* v. *Bush, O'Reiley* v. *The Kankakee Valley Draining Co.*, and *The State* v. *Pott-*

*meyer* are also overruled so far as they conflict with *The Water Works* case. One of the main authorities upon which *The Water Works* case was decided is *Haldeman* v. *The Pennsylvania Cen. R. R. Co.*, 50 Pa. State, 425. In this case, the statute authorizing the appropriation required the viewers to assess " the value of the land and all damages the owner or owners should sustain by reason of cutting the canal through such land."

In the case before us, the authority of the canal commissioners was merely " to enter upon and take possession of, and use all and singular, any lands, waters," etc. And, in case they could not obtain the right amicably, certain proceedings were to be had, and the jury appropriating the land was " faithfully, justly and impartially to estimate the loss or damage, if any, over and above the benefit accruing from the canal to such owner." I can not hold, that to " enter upon and take possession of and use " lands, means to take a fee-simple title in them; nor can I hold, that, when the damages are simply over and above the benefits, it is a compensation for the value of the fee-simple in the lands; and, in my opinion, when the act authorizes the taking of only an easement, the Legislature has no power to declare the title a fee-simple.

In the case of *The Brooklyn Park Comm'rs* v. *Armstrong*, 45 N. Y. 234, cited in support of *The Water Works* case, the act under which the land was taken required, that in ascertaining the compensation to be paid to the owners, " a just and true estimate of the value of the lands is to be made, and of the loss and damage to the respective owners, together with the tenements, hereditaments and appurtenances, privileges and advantages to the same belonging, by and in consequence of relinquishing the same to the city, without deduction for any supposed benefits or advantages; " and on fulfilling the requirements of the act, " the lands shall vest forever in the city." This means the full value of the fee-simple in the lands, and is a

very different estimate from that of damages over and above benefits.

These two authorities are the main supports of *The Water Works* case, and in my opinion do not sustain it; and much less, as I think, do they sustain the opinion pronounced in this case. In my judgment, the overruling of the case of *Edgerton* v. *Huff*, and virtually of the three cases which followed it, was a mistake, and a mistake that this court should now correct, and restore the law to its uniformity. This is said with the highest regard for the learned judge who pronounced the opinion in the overruling case. And the principles governing the case of *Edgerton* v. *Huff* have been essentially recognized by this court since that case was overruled, in *The Indianapolis, etc., R. R. Co.* v. *Ross*, 47 Ind. 25; *Cox* v. *The Louisville, etc., R. R. Co.*, 48 Ind. 178; and *Sharpe* v. *The St. Louis, etc., R. W. Co.*, 49 Ind. 296.

I agree with the opinion that it may be fairly presumed, from the lapse of time, that the canal commissioners appropriated the land of Rockhill, and that he received his damages therefor; but that presumption can not be wider than the authority of the act under which the appropriation must have been made, namely: that the right was obtained to "enter upon and take possession of and use" the lands, and that he was paid his damages over and above the benefits, according to the act. Surely, no conveyance from Rockhill in fee-simple for a full compensation can be presumed, because the canal would have a right to the possession of the land without a conveyance, under the appropriating act. Time could not run against Rockhill, because he could not question the possession of the land in the canal, as long as it is used as a canal.

The proviso in the act of 1835, requiring claims for damages to be made within two years, does not bar any reversionary interest in the land; it simply bars the claim

for damages. If the fee-simple in the lands was not taken and paid for, the reversion still remains.

I concur with the opinion of the court, however, in affirming the judgment; because the complaint shows that the appellee has all the title to the canal, and its appurtenances, that the State ever had, and all that was held by the late board of trustees; but I can not hold that the title is a fee-simple. Doubtless as long as the appellee maintains the work as a public canal, as it was originally designed to be, he can hold his franchise, and the easement in the lands. What effect the abandonment of the canal as a public work, or its change to a private purpose, might have upon the appellee's title to the land, is a question, as I think, not presented in the record. His title to an easement in the lands is good; that will maintain his case; it was therefore unnecessary to decide that his title was a fee-simple. Nothing should be decided in a case except what must become a part of the *res adjudicata.*

The questions in the case are reduced to these: Could the canal commissioners, by the authority of the law to " enter upon and take possession of and use " lands for the purpose of constructing a canal, take a title in fee-simple in the lands, against the will of the owner? Was the assessment and payment of damages, over and above the benefits accruing from the canal to the owner, a full compensation for the fee-simple title in the land? Can the Legislature, by a law authorizing the canal commissioners to " enter upon and take possession of and use " lands for a canal, make the title they thus obtain a fee-simple in the land, by legislative enactments?

The opinion in this case, if I understand it, answers all of these questions in the affirmative. From so much of it I dissent. The commissioners had no power to take any thing but an easement in the lands. There is no provision made in the acts of appropriation to pay for any thing but an easement. The public interests required no more than an easement, and, therefore, only an easement

could be taken; and, being only an easement, the Legislature could no more make it a fee-simple than they could make a smaller quantity equal to a greater, or the part equal to the whole.