## Case No. 7,703.

KENNEDY et al. v. INDIANAPOLIS et al.

[11 Biss. 13.] [1]

Circuit Court, D. Indiana. March, 1878. [2]

EMINENT DOMAIN — CONDEMNATION OF LAND FOR CANAL—FEE—BENEFITS SET OFF AGAINST DAMAGES—BENEFITS AND DAMAGES EQUAL — CONDITIONAL FEE — ABANDONMENT OF CANAL — REVERTING OF FEE—RIGHTS OF PROPERTY OWNERS — LOSS OF BENEFITS — FEE IN STREET WHERE CANAL WAS.

1. The supreme court of Indiana having decided that where a canal is constructed by the state and damages paid for the property, the state acquires the fee to the bed of the canal and not a mere easement, this court will follow such construction of the laws of the state.

2. The Indiana supreme court having also decided that it was competent for the commissioners in assessing the damages to the property owners, to consider also the benefits which would result to them from the construction of the work; this court will consider that as the settled rule of the state.

[See note at end of case.]

3. But if the commissioners assess the benefits as equal to the damages, and hence find no damages to be paid, the state acquires only a conditional fee in the property taken, the condition being that the work shall be proceeded with and the benefits actually received by the property owners.

4. And where upon the construction of a canal by the state, the commissioners assessed the benefits to the property owners as equal to their damages, and the canal was abandoned immediately after its construction, it was held that the benefits to property owners which were taken into consideration by the commissioners in assessing the damages, having failed by reason of the abandonment of the canal by the state, the fee to the bed and banks of the canal reverted to the property owners and did not pass to the grantees of the state.

[See note at end of case.]

5. If the state takes possession of a public street wherein to construct a canal, and abandons the canal upon its construction, a conveyance by the state of the canal, its bed and banks, will not pass the title to the street. Upon the abandonment of the canal the public and the abutting property owners become re-invested with their rights.

[Distinguished in Mason v. Lake Erie, E. & S. W. Ry. Co., 1 Fed. 714.]

[This was a bill in equity by John S. Kennedy and others, trustees, against the city of Indianapolis and others.]

T. A. Hendricks and A. G. Porter, for plaintiffs.

S. Claypool, for city of Indianapolis.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirmed in 103 U. S. 599.]

David Turpie and Harris & Calkins, for lot-owners.

Before DRUMMOND, Circuit Judge, and GRESHAM, District Judge.

DRUMMOND, Circuit Judge. By the legislation of this state, commenced in 1832 and ending in 1836, various systems of internal improvement were inaugurated and directed to be carried into effect; among others was the construction of a canal, connecting the Wabash and Erie Canal with the Ohio river, and it was provided that this canal, called the "Central Canal," should be constructed by the way of Indianapolis. Accordingly the work was commenced and executed to a greater or less extent in 1837, 1838, and 1839. The controversy in this case grows out of the construction of the Central Canal between Market street in Indianapolis and the southern part of the city along Missouri street and through a part of blocks 121, 125 and 126. The canal seems not to have encroached on any part of block 128.

One of the questions in the case is, as to the extent of the completion of the canal between Market street and the southern terminus of the city. I have assumed that the conclusions drawn by their counsel from the plaintiffs' testimony are substantially correct, viz.: That there was an excavation made under the authority of the state; that there was a tow-path more or less finished, and that there was water drawn into the canal between Market street and the southern portion of the city. It is true that, according to the testimony of the defendant's witnesses, some portions of the bed of the canal might be said to be in an unfinished condition. Stumps were left in various parts, and there is doubt whether the whole of the tow-path, even on one side, was entirely finished. But perhaps where these stumps were left the canal was deeper, and when the water came in it would be so deep there could be navigation upon the canal notwithstanding those stumps.

I have assumed, therefore, that there was a canal made; that there was an excavation, and that water flowed into that excavation, and some kinds of boats could be navigated there. In fact, however, there never was any use of this portion of the canal as a navigable canal, and immediately after the canal was so far made, various obstructions were placed across it and in it, so that it could not have been used as a navigable canal. For example, there was a bridge placed across it at Washington street, and another at Kentucky avenue, not constructed as upon a canal. There were timbers thrown across the canal; there were fences and stakes placed in it, and there was, almost immediately after the work was, as it is said, completed, and after it had been received as a finished work by the engineer, an abandonment of it by the state as a canal. The state ceased to carry out the general plan that had been adopted by its legislation, and proclaimed, so to speak, to the world that it was incapable of executing it, and all that there was remaining of this proposed canal from Market street south through the premises in controversy was an excavation through which water flowed, to run a mill in the southern part of the city. There were occasionally small boats there, but there was no regular canal-boat ever taken through this portion of the canal, although there seems to have been a lock at Market street.

It is necessary now to consider the status of the owners of the property upon this portion of the canal. The town of Indianapolis had been laid off by the state upon lands that had been granted to it by the United States for the capital of the state. It had been laid off into streets and lots, and among the streets thus laid off was Missouri street, and the lots were sold abutting upon that street as upon others, and by the rule of law established by the supreme court of this state, as I understand, in the absence of any clear intent shown by the owner, or indicated upon the plat of the town to the contrary, the abutting owners owned the lots to the center of the street, subject to an easement on the part of the public. So that Missouri street being thus laid off under the authority of the state and lots sold abutting on it, the owners of those lots owned to the center of the street, subject to the public use. There does not seem to have been any permission granted to the state by the town authorizing it to construct a canal along Missouri street. Nor does there seem to have been any permission granted by the abutting owners nor any compensation given to them by the state, but the state, by virtue of its sovereign power, assumed control of Missouri street and constructed a canal upon it, on the basis that it had the right so to do. There was then this public street laid off by the state as one among the public highways of the town of Indianapolis. There was this right of the abutting owners in the property at the time the canal was there made.

Blocks 121, 125 and 126 were the property, at the time the canal was run through them, of two persons, Van Blaricum and Coe. Van Blaricum claimed compensation in damages when the canal was proposed to be constructed through his land, and adopted the proceedings pointed out by the law to obtain them. The commissioners appointed reported that the benefits which he would receive from the construction of the canal equaled any damages that his property might sustain; and therefore, allowed him no compensation in money for taking his property.

It is alleged that Coe waived any right he might have had to damages. This is denied

in the answer, and there is no proof upon the subject one way or the other. It may be said here that there is no controversy but that the defendants who now claim rights in that portion of the canal in these three blocks, have the original title of Van Blaricum and Coe.

Now, this being the state of the case in relation to this property, the question is, what rights had the state acquired either upon Missouri street or upon blocks 121, 125 and 126; and if the state acquired rights how are they affected by what has taken place since this portion of the canal was opened. It may be observed that there is no question but that the plaintiffs or their mortgagors have whatever rights the state had at the time the conveyance was made to its grantees in 1850.

The plaintiffs in this case filed their bill to quiet the title to the land in controversy—the bed of the canal and its banks from Market street south—for the reason, as alleged, that it belongs to the Indianapolis, Cincinnati and Lafayette Railroad Company; and that they are trustees of mortgages which have been given by railroad companies of which that is the successor and representative; and that they have called upon the railroad company to protect its rights to this property, and that it has declined; and, therefore, they, as trustees of mortgages, have filed a bill for the protection of those rights.

It has been decided by the supreme court of this state, in the case of Water Works Co. v. Burkhart, 41 Ind. 364, that, by virtue of the legislation which existed at the time this canal was constructed, the state, when damages were given for the use of the property, acquired the fee in the soil—in the bed of the canal.—and, although that is contrary to the decision of the same court, made in Edgerton v. Huff. 26 Ind. 35, I am not now disposed to question the law of the case. But, in overruling Edgerton v. Huff, the court considered it was bound to take all the legislation upon the subject together, not considering simply the act of 1836, but the question arose in that case in relation to land, or land covered by water, (because it was a controversy about some ice that was taken from the canal,) which had been paid for by the state in money. The law provided, and I assume that was the rule in the case, that it was competent for the commissioners to take into consideration in assessing the damages which were to be allowed to property owners, the benefits which might result from the construction of the work. The supreme court decided that it was competent so to do under the constitution of the state, which declared that no private property should be taken without just compensation. But the question does not seem to have been distinctly considered in Water Works Co. v. Burkhart, what might be the effect of that provision of the constitution where a part of the consideration, or the whole, given to the owners was the benefits to be derived by them from the completion of the work, if the work was actually abandoned—if in point of fact there never was a completed navigable canal. If we concede the correctness of the rule laid down by the supreme court of this state, that benefits might form the whole or a part of the consideration for the taking of private property, it would seem to be an injustice to take property, allowing nothing for it except the benefits, and then deprive the owner of any benefits whatever, by the non-completion or instant abandonment of the work.

A strong illustration is found in the case of Van Blaricum. He was not allowed a dollar of compensation for the property that had been taken. It was said by the commissioners that the benefits which he received from the construction of the work were equal to any damage he might sustain for taking his property. If so, it must have been because of the real benefits received as understood by the commissioners. To excavate the land, to permit the water, temporarily, to flow through the excavation, and then immediately abandon it entirely, could not be said to be the benefits conferred upon Van Blaricum for taking his land. So that it seems to me we must consider, in reference to this part of the case and the effect of the action of the state in taking the property under the circumstances in which this property was taken and then abandoning it as a canal, the difference there would be between a case where the state had actually paid the value of the property and where it paid nothing except in supposed benefits by the construction of the work. But it is said that, even conceding that nothing has been paid, the result is the same as though compensation had actually been given, because if no claim was made it is to be presumed the owners acquiesced and did not ask for damages, and, therefore, that the fee of the property is vested in the state precisely as though the value in money had been paid. I think a conclusive consideration in connection with that view of the case is the fact that the owners must have been presumed to acquiesce and ask for no damages, because they supposed they were to receive the improvement which the state contemplated, viz., the canal—and that their property was to be benefited by the actual construction and continuance of the canal.

Now this is not a case where property has been taken and used by the state for one purpose, and then diverted to another, but where it has been taken for a particular purpose and then without use, entirely abandoned by the state. And what is the claim on the part of these plaintiffs representing the railway company in relation to Missouri street? It is this: that, although the street was laid off by the state as a public highway; although the town of Indianapolis possessed it and had

authority over it as such; and the state then took it for a canal, and abandoned it immediately in 1839 or 1840, and more than ten years prior to the conveyance by the state, and more than twenty years before the filing of this bill, in consequence of what had taken place, the state was clothed with absolute title in fee simple to Missouri street; and that the railroad company is vested with the absolute right of property in that street, and can use it as private property.

I must confess I do not feel inclined, under the facts in this case, to sustain such a claim on the part of the plaintiffs. I think it must be held that when the state, even admitting it had the right to take it for canal purposes, abandoned it as such, that the public then became reinvested with the right which had previously existed in it, and that it was thenceforth a public highway. Any other view of it certainly would be unjust to the public. It would be unjust to the abutting owners of property on the street. It is said it must be assumed that the state would not undertake to grant what it had not the right to convey. I will not assume that it was the intention of the state in the general conveyance which it made of this canal, its bed and banks, to clothe the vendees with the absolute title to the property in Missouri street. I will rather infer that it intended to convey the right which at the time it actually had elsewhere. And it is to be observed that the state has done nothing in relation to this street, nor have its grantees done anything to assert a right of property from the time that the work was abandoned in 1839 or 1840, up to the time this suit was commenced, unless it was to protest against the construction of the sewer built by the city in and along Missouri street. Everything that indicated abandonment on the part of the state was permitted to remain just as it was, and nothing has occurred except this protest and the filing of this bill to show that these parties claimed absolute rights in this property. Then as to blocks 121, 125 and 126, no money was paid by the state for that property. So far as we know, no control was exercised over it after the abandonment of the canal by the state. There was nothing to indicate that there ever had been a canal there except that for some years water flowed to run a mill in the south part of the town. For many years prior to the filing of this bill water had ceased to flow, either on Missouri street or through these blocks, and a large portion of the excavation had been completely filled up.

Now, it is claimed that because of what took place, the rights of property, both of Coe and Van Blaricum, were divested, and that the state was clothed with absolute right of property in the canal bed and banks, although not a dollar, so far as we know, was ever paid for it, and although the work was immediately abandoned as such.

If there was any fee taken under these cir-cumstances by the state it was a conditional fee. It was only on the assumption that the parties had what the commissioners inferred that they were going to have—a navigable canal—and when it ceased to be such, the condition upon which the fee was granted, if at all, had not been complied with, and the owners became reinvested with the title to their property. Otherwise, as I have stated, this logical conclusion follows: that a great state like Indiana would have a right to say to the owners of property within its borders: "We will construct a canal and thus improve your property through which it will pass, and make it more valuable," and then begin its construction in part, let water flow through it for a year or so as here, then abandon it altogether, thereby acquiring the fee in the bed of the canal, banks, etc., and divesting the owners of theirs; then grant it to other parties for value.

I cannot think this is equitable or just, or that the state of Indiana ought, nor will I infer it intended, thus to divest its citizens of their property. I have been able to give but an imperfect examination to this case. But I do not think it would be possible that any examination I could give would satisfy me that this claim on the part of these plaintiffs is just; and I believe there is no case decided by the supreme court of this state which compels me to sustain it. It is to be observed that in all the cases which have come up, as well in the case of Water Works Co. v. Burkhart, as in Nelson v. Fleming, 56 Ind. 310, in relation to the Wabash and Erie Canal, there has been no instance, so far as I can see, where the precise questions that are raised here have been decided. In all the cases the court takes for granted that the canal was a subsisting reality. Even in the Case of Burkhart, of the ice on the canal in this city, there was at the time the question arose a canal with water in it; and although perhaps it was not precisely the canal which the state contemplated at the time the legislation took place, and although the water was only used for hydraulic purposes, still there was a quasi canal, and compensation had been paid for the land; and this question does not, in any of these cases, appear to have come up and been decided by the supreme court. So I feel free to decide this case in conformity with my opinion of right and justice. If the supreme court of the United States shall think differently, of course I will acquiesce. But according to my own views I must dismiss this bill.

[NOTE. An appeal was then taken by the complainant to the supreme court, where the decree was affirmed in an opinion by Mr. Chief Justice Waite, who said that the rule as laid down by the supreme court of Indiana is that the right to enter on and use property "is complete as soon as the property is actually appropriated under the authority of law for a public use, but that the title does not pass from the owner, without his consent, until just compensation has been made to him." Applying this rule to the facts, the learned justice held that

there could be no pretense that the canal was ever put in a condition for navigation below Market street, and thus no benefits accrued to the landowners such as they were willing to accept as compensation for the appropriation of their land. Under these circumstances no title passed to the state, and the railroad company took nothing by its purchase. 103 U. S. 599.]