MASON *v.* THE LAKE ERIE, EVANSVILLE & SOUTH-WESTERN
RAILWAY COMPANY.

(*Circuit Court, D. Indiana.* January 23, 1880.)

WABASH & ERIE CANAL—TOW-PATH—ABSOLUTE TITLE OF STATE—
CONVEYANCE TO TRUSTEES—ABANDONMENT.—The state of Indiana,
under various acts of the legislature, acquired the absolute title to the
tow-path of the Wabash & Erie Canal, and the mere fact that the land
ceased to be used for that purpose did not re-vest the same in the orig-
inal owners, where the property in controversy had been transferred to
trustees for the benefit of creditors of the state.

DRUMMOND, J. Under various acts of the legislature of this
state there had been constructed and operated, prior to 1847,
a canal called the Wabash & Erie Canal, extending from
Evansville, on the Ohio river, to Toledo, on Lake Erie. The
state became very much embarrassed, and owed to many per-
sons debts incurred for moneys advanced for the construction
of the canal, and, by virtue of different statutes, on the thirty-
first of July, 1847, conveyed the canal, with all its appendages,
to the board of trustees of the Wabash & Erie Canal, for
the benefit of the creditors of the state. The creditors, by
virtue of a decree of this court of December 24, 1875, sought
to enforce their rights against the property conveyed to the
trustees, and under its order the property was sold in differ-
ent parcels. Under the sale, Dukes, the petitioner in this
case, became the purchaser of all that portion of the canal
and its appendages in Vanderburgh and Warrick counties,
except what was within the territorial limits of the city of
Evansville, for the sum of $3,250.

In 1872, while the conveyance of 1847 was thus operating
upon the canal and its appendages, the defendant railway
company took possession of about nine and one-third miles
of the tow-path of the canal, being a portion of that purchased
by the petitioner, and constructed its railroad upon that part.
So far as we know, from the records of this case, this was
done by the railway company without any authority from the
state, or from the board of trustees, nor was it by virtue of
any proceeding under any law of the state. The railway com-

pany made a mortgage on its property to secure certain indebtedness due to various of its creditors, and at the November term, 1876, of this court, the plaintiffs in this case filed a bill to foreclose this mortgage, and on the fifteenth day of June, 1877, this court rendered a decree of foreclosure, and the railway and its property were directed to be sold, and they were accordingly sold on the thirty-first day of October, 1877.

The petition of Dukes, filed June 14, 1877, assumes that the railroad was constructed on the land described while it was the property of the state, or rather, perhaps, of the trustees to whom it had been transferred by the state; the state, at the time the transfer was made, having, it is insisted by the petitioner, an absolute, indefeasible title in the land on which the railway was constructed. The intervening petition of Dukes was referred to the master to determine whether there should be anything paid to the petitioner for any interest which he had in the land, and, if so, what sum. The master took evidence in the case and found, and has so reported, that the petitioner was the owner, under his purchase, of the land in controversy, of which the railway had taken possession, and that he was entitled to the sum of $16,800, as a reasonable compensation for the value of the property. The result of this report of the master is that he was of the opinion that no right was lost by the owner of the canal property in consequence of the action of the railway company, or of the non-action of the state, or of the trustees, or because of the delay on the part of the latter to interfere with the possession of the railway company.

Various questions have been argued on exceptions taken to the report of the master. The material ones are whether Dukes bought any title to this part of the canal, and, if so, what damages ought to be paid to him as compensation for the land occupied by the railway company. As connected with this, it becomes necessary to determine whether, under the various laws of the state, it acquired an absolute title to the property in controversy, or whether it had the mere use as long as the canal existed as such; for it is admitted that, long before the rights of the creditors were sought to be en-

forced by the decree of this court in the sale of the canal and its appendages, it had been abandoned as such, and had ceased to be used for several years.

As the case originally stood I had some difficulty in sustaining any equity which the petitioner might have, in consequence of the particular situation of the property at the time it was taken possession of by the railway company, and because of the purchase made many years afterwards by the petitioner; but I think that difficulty has been obviated by a stipulation made between all the parties to the controversy, in which it is agreed that the railway company, being in possession of the property, and the petitioner only claiming compensation for what may be his interest, he shall make an absolute conveyance to the railway company of all his interest, upon the payment of such sum as shall be ultimately decided by this court or by the supreme court of the United States.

I think I must hold in this case, and so affirm the ruling of the master, that in view of all the legislation on the subject by this state, and the later decisions of the supreme court of the state thereon, the state acquired an absolute title to the property in controversy in this case. *The Water-Works Co.* v. *Burkhardt,* 31 Ind. 364; *Fleming* v. *Nelson,* 56 Ind. 310. This is not like the case of *Kennedy* v. *City of Indianapolis,* decided in this court in March, 1878. In that case the canal had never been completed or operated as a canal, and it was through a public street of the town that the canal was intended to be constructed. It was, therefore, a case of an attempt to construct a canal which was abandoned before completion. It was a case where the right to land, if any existed, was abandoned before use. In this case it is different. The land for the canal throughout its whole length, so far as this case is concerned, was taken. The canal was constructed and operated for many years. There was thus acquired by the state the title to the land occupied by the canal, and its necessary appendages, and because the canal, after being used for a series of years, was abandoned, and the land ceased to be occupied as a canal, it did not cease to be the property of the state. This was one of the great systems

of internal improvement devised and executed in pursuance of the legislation of the state; and the state, having incurred debts through its construction and operation, had transferred whatever interest it had to trustees, for the benefit of its creditors, and therefore there existed in the creditors whatever interest the state had in the canal, and the lands which had been used for canal purposes; and, at the time the railway company took possession of the land in controversy, the contract made for the benefit of the creditors was still binding upon the property.

I must assume, I think, also, that the original owners of the land used for the purposes of the canal had become absolutely divested in favor of the state of all interest whatever in their property, and that the fact that the land ceased to be used for a canal did not re-invest the property in them. This being so, it follows that the foreclosure and sale of the property covered by the deed of trust, which was given by the state for the benefit of the creditors of the canal, clothed the purchaser at that sale and the petitioner in this case with the title to the property in controversy; and that he could recover possession of the same by proper legal proceedings in any court having jurisdiction of the case and of the property in controversy, the railway company having acquired no title to the same. The exceptions, therefore, to this part of the master's report must necessarily be overruled.

The next question is whether the master has allowed a proper amount as compensation to the petitioner for the interest which he acquired by virtue of his purchase of the property. The master felt great embarrassment, which is shared by the court, in determining this question, because the testimony upon the subject is very voluminous and conflicting, and it would be impossible to say, from the examination of the testimony, what is the true value of the property beyond all cavil or doubt. I have concluded, on the whole, to make a reduction from the amount allowed by the master in his report. It is true that the price of property obtained at a sale under legal proceedings is not always a true test of its value, and yet, in view of the great conflict of evidence in

this case, it seems to me impossible to be uninfluenced by the price which the petitioner gave for more property than is in controversy in this case. That price was only $3,250. The sale to the petitioner was a public sale, after ample advertisement. It is difficult, of course, to lay down any absolute rule, even as to the reduction of the amount allowed by the master. We must necessarily generalize, to a greater or less extent, in considering a question of this kind under the character of the evidence. On the whole, I have come to the conclusion that I shall reduce the amount allowed by the master to the sum of $10,000, and for that amount a decree will be allowed to the petitioner, which the owners of the railway will be required to pay upon the execution of a deed by the petitioner to them.