PENRHYN SLATE CO. et al. v. GRANVILLE ELECTRIC LIGHT & POWER CO. et al.

(Supreme Court, Appellate Division, Third Department. May 6, 1903.)

1. RIPARIAN RIGHTS—DIVERSION AND SALE OF WATER.

An upper riparian owner, while entitled to a reasonable use of the waters of a stream as it flows past his premises, has no right, as against a lower riparian owner, to divert such water, or any portion thereof, and sell it to another.

2. SAME—PERSONS LIABLE—VILLAGE WATER SUPPLY.

The right of a riparian owner to have the waters of a stream flow in their natural channel and in their natural volume, and to ask the aid of a court of equity to secure to him the enjoyment of such right, exists against a village, the same as against an individual.

3. SAME—INJURIES—EXTENT OF—REMEDIES—INJUNCTION.

A company having a water privilege on a stream contracted to pump water into the reservoirs of a village, which contained its water supply. The amount used daily was about one-fourth of 1 per cent. of the average supply of the stream for the whole year. *Held* that, although the injuries to lower riparian owners operating dams and water powers were trifling, they were entitled to an injunction restraining such unlawful diversion of the water.

4. SAME—POWER OF TRIAL COURT.

The trial court had power to grant the injunction, and at the same time, in its discretion, suspend its operation until the village could, with reasonable diligence, acquire the riparian rights from the plaintiffs either by purchase or condemnation proceedings.

Appeal from Trial Term.

Action by the Penrhyn Slate Company and another against the Granville Electric Light & Power Company and another. Judgment for defendants, and plaintiffs appeal. Reversed.

The plaintiffs are riparian owners on the Mettowee river, in Washington county, N. Y., and each owns a dam and operates a water power thereon. About three miles above is located the village of Granville, one of the defendants herein, and also the Granville Electric Light & Power Company. Such latter defendant is a domestic corporation, and a riparian owner on such stream, and operates a dam and water power thereon. The electric light and power company has entered into a contract with the village "to pump the water supply of said village at all times into a reservoir to be erected by said village, and that they will at all times keep the reservoir or reservoirs filled with water, which they are to furnish from their water privilege on the Mettowee river." The contract further provides that they will at all times

pump such water supply in such quantity as the village shall demand, and that the contract shall extend for the term of 99 years. The company is to receive from the village, in consideration therefor, 25 per cent. of all the water rents paid to the village for the use of the water. Such company, or its predecessors in the ownership of such water power, have pumped water from the stream, under such contract, since the year 1885; and it is the only source from which the village obtains its water supply. It is now using about 200,000 gallons of water a day, and such amount is less than 1 per cent. of the whole supply of the stream in the summer and in times of low water. It is about one-fourth of 1 per cent. of the average supply for the whole year. In times of low water the whole supply of the stream is not enough to run the plaintiffs' mills, or either of them. The electric company makes no claim to the use of the water, save that of a riparian owner; and the village has taken no measures to acquire a right to divert the water from the stream, save through the contract above mentioned. The plaintiffs have brought this action to perpetually enjoin the defendants, or either of them, from diverting the water from the stream, so used by the village; claiming that at certain times it injuriously interferes with the use of their water power, and unlawfully diverts the stream from its usual and natural flow. No damages are asked in this action. The trial court dismissed the plaintiffs' complaint as against each defendant, and from such judgment of dismissal this appeal is taken.

Argued before PARKER, P. J., and SMITH, KELLOGG, CHASE, and CHESTER, JJ.

Charles C. Marshall and Stephen G. Williams, for appellants.

J. B. McCormick, for respondent Granville Electric Light & Power Co.

John Gilroy and J. Sanford Potter, for respondent village of Granville.

PARKER, P. J. Concededly, the defendant the Granville Electric Light & Power Company is, for a consideration paid to it, pumping water from this stream sufficient to furnish the village of Granville with its daily supply, and it is under contract to continue to so pump all that the village may require for a period of 99 years from 1885. Concededly, its only right to the use of the water in such stream is that of a riparian owner, and so the first question presented is whether a riparian owner, as such, has the right, as against a lower riparian owner, to divert from their natural flow the waters of a stream, or any portion thereof, and sell them to another, for a compensation paid him. The respondents seem to claim that, unless such diversion substantially injures the lower owner, such right exists, or at least that a court of equity will not interfere to prevent it. The decisions, however, in this state, are distinctly opposed to such a claim. Corning v. Troy Iron & Nail Factory, 40 N. Y. 191; Smith v. City of Rochester, 92 N. Y. 463, 44 Am. Rep. 393; New York Rubber Co. v. Rothery, 132 N. Y. 293, 30 N. E. 841, 28 Am. St. Rep. 575; Amsterdam Knitting Co. v. Dean, 162 N. Y. 278, 280, 56 N. E. 757; Strobel v. Kerr Salt Co., 164 N. Y. 303, 58 N. E. 142, 51 L. R. A. 687, 79 Am. St. Rep. 643. The upper riparian owner is entitled to a reasonable use of the water as it flows past his premises, but such use, I apprehend, does not exceed that which is needed for, or beneficial to, the use of such premises. It does not extend to a sale and diversion of the same to the benefit of another. Such a diversion utterly transcends the rights of a riparian owner. It is an unlawful interference with the

natural flow of the water, and hence an unlawful interference with the lower riparian owner's rights.   28 Am. & Eng. Ency. of Law, 955. This principle, I think, is clearly established by the Strobel Case, above cited.   And if this action had been between the plaintiffs and the electric company, merely, and the water had been sold and diverted by it for the benefit of a private individual only, it is probable that such rule would have been recognized and enforced by the trial court.   But the diversion being of so small a percentage of the natural flow, and being applied to the water supply of a village, it is urged that it is inequitable to apply such rule in favor of the plaintiffs, whose injuries are so very slight as to be practically nothing.

This right of a riparian owner to have the waters of a stream flow in their natural channel and in their natural volume, and to ask the aid of a court of equity to secure to him the enjoyment of such right, exists against a village, the same as against an individual; and the facts which would establish such a right against the individual should be sufficient to secure its protection against a village, however much the necessities of the village require that the waters of the stream be diverted.   It is a question of right, and by dismissing the complaint in this case the trial court has, in effect, decided that the plaintiffs' rights have not been invaded.   However trifling their injuries may have been, it seems to me, under the decisions, very clear that they have a substantial right to have the water which is thus diverted flow in its natural channel, and no judgment should have been rendered which denies them that right.   If the public necessity of the village of Granville requires that the water be daily diverted from such stream, it has a plain method of securing such right by condemnation.   If the damages which it would have to pay the plaintiffs for such a diversion are trifling, so much the better for the village.   From the evidence, it seems that the plaintiffs would hardly miss the 200,000 gallons which the village is now daily using, and that they are ungenerously insisting upon a technical right, rather than seeking to protect themselves against an injury; yet it is not entirely clear that they might not, by acquiescing in the performance of the contract by the electric company for a year or two longer, lose entirely the right to prevent the diversion contemplated therein, however much it may be increased, and however much it may hereafter result in their injury. The rights of both parties are best protected by recognizing them as they actually exist, and requiring the village to respect them.   The trial court had the power to grant the injunction, and thus recognize and secure to the plaintiffs their plain rights as riparian owners, and at the same time, in its discretion, suspend the operation of the injunction until the village could, with reasonable diligence, acquire such rights from the plaintiffs either by purchase or condemnation proceedings.   Sammons v. City of Gloversville, 34 Misc. Rep. 459, 70 N. Y. Supp. 284, affirmed in 67 App. Div. 628, 74 N. Y. Supp. 1145.   Such discretion is best exercised by the trial court.   I am of the opinion, therefore, that this judgment should be reversed, and a new trial granted.

Judgment reversed on law and facts, and new trial granted, with costs to appellant to abide event.   All concur; SMITH and CHASE, JJ., in result.