THE PENRHYN SLATE COMPANY and FRED W. ALLEN, Appellants, *v.* GRANVILLE ELECTRIC LIGHT AND POWER COMPANY and THE VILLAGE OF GRANVILLE, Respondents.

*Riparian owner — diversion of a very small percentage of water from a stream, for municipal purposes, enjoined — stay until the right thereto can be condemned.*

A riparian owner of land bordering on a stream has no right, as such, to divert a portion of the water of the stream and sell it to a village for the purpose of its municipal water supply.

If he does so, a lower riparian owner is entitled to injunctive relief, although the percentage of the stream diverted is so small that the injury inflicted on the lower riparian owner is very slight.

In such a case the court may suspend the operation of the injunction until the village has been afforded a reasonable time to acquire the lower riparian owner's right, either by purchase or by condemnation proceedings.

APPEAL by the plaintiffs, The Penrhyn Slate Company and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Washington on the 28th day of October, 1902, upon the decision of the

court, rendered after a trial at the Saratoga Special Term, dismissing the plaintiffs' complaint upon the merits.

The plaintiffs are riparian owners on the Mettowee river, in Washington county, N. Y., and each owns a dam and operates a water power thereon.   About three miles above is located the village of Granville, one of the defendants herein, and also the Granville Electric Light and Power Company.   Such latter defendant is a domestic corporation and a riparian owner on such stream and operates a dam and water power thereon.   The electric light and power company has entered into a contract with the village to " pump the water supply of said village at all times into a reservoir to be erected by said village, and that they will at all times keep the reservoir or reservoirs filled with water, which they are to furnish from their water privilege on the Mettowee river."   The contract further provides that they will at all times pump such water supply in such quantity as the village shall demand, and that the contract shall extend for the term of ninety-nine years.   The company is to receive from the village, in consideration therefor, twenty-five per cent of all the water rents paid to the village for the use of the water.   Such company, or its predecessors in the ownership of such water power, have pumped water from the stream, under such contract, since the year 1885, and it is the only source from which the village obtains its water supply.   It is now using about 200,000 gallons of water a day, and such amount is less than one per cent of the whole supply of the stream in the summer and in times of low water.   It is about one-fourth of one per cent of the average supply for the whole year.   In times of low water the whole supply of the stream is not enough to run the plaintiffs' mills, or either of them.

The electric company makes no claim to the use of the water, save that of a riparian owner, and the village has taken no measures to acquire a right to divert the water from the stream, save through the contract above mentioned.

The plaintiffs have brought this action to perpetually enjoin the defendants, or either of them, from diverting the water from the stream, so used by the village, claiming that at certain times it injuriously interferes with the use of their water power and unlawfully diverts the stream from its usual and natural flow.   No damages are asked in this action.

The trial court dismissed the plaintiffs' complaint as against each defendant, and from such judgment of dismissal this appeal is taken.

*Charles C. Marshall* and *Stephen G. Williams*, for the appellants.

*J. B. McCormick*, for the respondent Granville Electric Light and Power Company.

*John Gilroy* and *J. Sanford Potter*, for the respondent The Village of Granville.

PARKER, P. J.:

Concededly the defendant the Granville Electric Light and Power Company is, for a consideration paid to it, pumping water from this stream sufficient to furnish the village of Granville with its daily supply, and it is under contract to continue to so pump all that the village may require for a period of ninety-nine years from 1885. Concededly its only right to the use of the water in such stream is that of a riparian owner, and so the first question presented is whether a riparian owner, as such, has the right, as against a lower riparian owner, to divert from their natural flow the waters of a stream, or any portion thereof, and sell them to another for a compensation paid him. The respondents seem to claim that unless such diversion substantially injures the lower owner, such right exists, or at least that a court of equity will not interfere to prevent it.

The decisions, however, in this State are distinctly opposed to such a claim. (*Corning* v. *Troy Iron & Nail Factory*, 40 N. Y. 191; *Smith* v. *City of Rochester*, 92 id. 463; *New York Rubber Co.* v. *Rothery*, 132 id. 293; *Amsterdam Knitting Co.* v. *Dean*, 162 id. 278, 280; *Strobel* v. *Kerr Salt Co.*, 164 id. 303.) The upper riparian owner is entitled to a reasonable use of the water as it flows past his premises, but such use, I apprehend, does not exceed that which is needed for, or beneficial to, the use of such premises. It does not extend to a sale and diversion of the same to the benefit of another. Such a diversion utterly transcends the rights of a riparian owner. It is an unlawful interference with the natural flow of the water, and hence an unlawful interference with the lower riparian owner's rights. (28 Am. & Eng. Ency. of Law, 955.) This

principle I think is clearly established by the *Strobel* case, above cited.

And if this action had been between the plaintiffs and the electric company, merely, and the water had been sold and diverted by it for the benefit of a private individual only, it is probable that such rule would have been recognized and enforced by the trial court. But the diversion being of so small a percentage of the natural flow, and being applied to the water supply of a village, it is urged that it is inequitable to apply such rule in favor of the plaintiffs, whose injuries are so very slight as to be practically nothing.

This right of a riparian owner to have the waters of a stream flow in their natural channel and in their natural volume, and to ask the aid of a court of equity to secure to him the enjoyment of such right, exists against a village the same as against an individual; and the facts which would establish such a right against the individual should be sufficient to secure its protection against a village, however much the necessities of the village require that the waters of the stream be diverted. It is a question of right, and by dismissing the complaint in this case the trial court has, in effect, decided that the plaintiffs' rights have not been invaded. However trifling their injuries may have been, it seems to me, under the decisions, very clear that they have a substantial right to have the water which is thus diverted flow in its natural channel, and no judgment should have been rendered which denies them that right. If the public necessity of the village of Granville requires that the water be daily diverted from such stream, it has a plain method of securing such right by condemnation. If the damages which it would have to pay the plaintiffs for such a diversion are trifling, so much the better for the village. From the evidence, it seems that the plaintiffs would hardly miss the 200,000 gallons which the village is now daily using, and that they are ungenerously insisting upon a technical right, rather than seeking to protect themselves against an injury; yet it is not entirely clear that they might not, by acquiescing in the performance of the contract by the electric company for a year or two longer, lose entirely the right to prevent the diversion contemplated therein, however much it may be increased and however much it may hereafter result in their injury. The rights of both parties are best protected by recognizing them as they actually exist, and

requiring the village to respect them. The trial court had the power to grant the injunction, and thus recognize and secure to the plaintiffs their plain rights as riparian owners, and at the same time, in its discretion, suspend the operation of the injunction until the village could, with reasonable diligence, acquire such rights from the plaintiffs, either by purchase or condemnation proceedings. (*Sammons* v. *City of Gloversville,* 34 Misc. Rep. 459 ; affd., 67 App. Div. 628.) Such discretion is best exercised by the trial court. I am of the opinion, therefore, that this judgment should be reversed and a new trial granted.

All concurred ; SMITH and CHASE, JJ., in result.

Judgment reversed on law and facts and new trial granted, with costs to appellant to abide event.