### SAMUELS v. ARMSTRONG.

(Supreme Court, Special Term, Delaware County. January 18, 1905.)

NATURAL STREAMS—DIVERSION OF WATER—USE FOR COMMERCIAL PURPOSES.

One through whose land a stream flows has no right, as against a lower riparian owner, to divert it to a reservoir, and use the ice there formed for commercial purposes.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Waters and Water Courses, §§ 33–37, 67–71.]

Action by Isaac Samuels against Walter Armstrong. Judgment for plaintiff.

B. & C. B. Johnson, for plaintiff.
Wagner & Fisher, for defendant.

FORBES, J. This is an action to restrain the diversion of water from a natural stream known as the "Tremperskill," located near Andes, in the county of Delaware. Aside from the fact of the amount of water which could be and was taken from the stream through the outlet, there is very little dispute upon any question of fact. The plaintiff and the defendant owned farms adjoining. North of the plain-

tiff's division line, the Tremperskill runs entirely through the land of the defendant, down to the plaintiff's line, at which point the entire creek bears slightly westerly, and runs wholly upon the plaintiff's land. The line fence between the contending parties is located upon, and is a few feet east of the bank of said creek. This line is also the west line of the defendant's land, purchased by the defendant, and which had previously been taken off from the northeast corner of the land now owned by the plaintiff. In the month of November, 1902, the defendant dug a ditch upon his own land, north of the plaintiff's premises; and, by throwing stones, brush, and dirt into the Tremperskill creek at that point, defendant prepared to divert the water from the main stream, across his own land, down to a pond which he had just constructed for that purpose. The ditch so constructed runs southeasterly to a point opposite the east line of the plaintiff's premises. At that point excavations were made, and a pond was constructed along the plaintiff's east line, covering something like half an acre of land. A dam was built across the southerly portion of said pond, a wall was built upon the easterly side, and an embankment was thrown up against the plaintiff's line on the westerly side of the defendant's premises. About the 17th day of November, 1902, the water was diverted from said creek, and by the ditch so dug by the defendant a portion of said creek was carried into the pond in question. It is admitted by the defendant, and there seems to be no dispute about the question, that the pond was constructed for the purpose of filling the same with water, letting it freeze, and then taking from said pond quantities of ice, which were to be used in part upon the premises of the defendant, for dairy purposes, and also for sale to various other people, by filling ice and store houses, for a compensation paid to the defendant. The evidence is undisputed that a portion of the water in said creek was diverted and stored in said pond, and ice was frozen, cut, drawn away, and delivered to several other individuals and firms in the village of Andes. This action was brought to recover damages for the diversion of the water from said creek, and also to restrain the defendant from diverting and continuing to divert the same, and from using the ice from said pond for commercial purposes.

These facts raise but a single question of law. It is undoubtedly true that each riparian owner has the right to a reasonable and proper use of the water of a natural stream. Strobel v. Kerr Salt Co., 164 N. Y. 303, 58 N. E. 142, 51 L. R. A. 687, 79 Am. St. Rep. 643; Pierson v. Speyer, 178 N. Y. 270, 70 N. E. 799. I think, however, that each action must be governed very largely by the facts of the particular case. Townsend v. Bell, 167 N. Y. 462, 60 N. E. 757. An adjoining riparian owner has a right to use water from the creek for farming and domestic purposes, and, probably, where the volume taken is not very considerable, he has the right to lead the water from that creek to his own premises for personal use in irrigation, building fish ponds, and for certain ornamental uses and purposes. One riparian owner has no right to divert the stream, and lessen the volume of water, to the detriment, annoyance, or future disadvantage or injury of the adjoining riparian owner. This proposition is carefully dis-

cussed in the authorities cited, supra. It must be conceded that where there is no diversion of water from the stream, and the upper riparian owner has erected a mill dam or pond wholly upon his own land, not unnecessarily and unlawfully depriving the lower owner of his right to the use of the water, the upper owner may then use the ice upon the pond for any purpose to which he desires to devote it. That question seems to be well settled in several authorities in the lower courts of this state. State v. Pottmeyer, 33 Ind. 402, 5 Am. Rep. 224; Myer v. Whitaker, 55 How. Prac. 376; Dodge v. Berry, 26 Hun, 246; De Baun v. Bean, 29 Hun, 236; Hazleton v. Webster, 20 App. Div. 177, 46 N. Y. Supp. 922; Swan v. Goff, 39 App. Div. 95, 56 N. Y. Supp. 690. These decisions, however, are based upon the superior rights of the upper owner upon the stream, as owner of the soil. The lower riparian owner then takes his right to the use of the remainder subject to the lawful uses and conveniences of the other in the use of the stream.

The question now arises whether the defendant has an absolute right to divert any portion of this stream by constructing a new waterway or dike upon his own land, leading the water from the creek to a place opposite the land of the plaintiff, and there using that water in part for commercial purposes; thus enabling him to supply the inhabitants of the village of Andes with ice. These facts seem to be substantially admitted, and are entirely undisputed, upon the evidence in the case. Since its original construction, the defendant admits that the dam has been raised 18 inches, flooding a larger area of land, solely for the purpose of enabling him to take more ice from the pond for commercial purposes. It was admitted upon the trial that an eighth of an acre of land is amply sufficient for the defendant's private, farm, and domestic purposes. Is there any difference, in principle whether the stream is diverted and placed in a reservoir, and thence led in pipes to supply the inhabitants of the village of Andes with water? In either case there is a diversion of the stream. In the case at bar the water in the pond is left to congeal, and then, in that form, is transported to the inhabitants of the village.

I think the case of Penrhyn Slate Co. v. Granville El. L. & P. Co., 84 App. Div. 92, 82 N. Y. Supp. 547, demonstrates clearly that in principle there is no difference. It is there held:

"A riparian owner of land bordering on the stream has no right, as such, to divert a portion of the water of a stream and sell it to a village for the purpose of its municipal water supply."

It is also there held:

"If he does, a lower riparian owner is entitled to injunctive relief, although the percentage of the stream diverted is so small that the injury inflicted upon the lower riparian owner is very slight." .

Following Strobel v. Kerr Salt Co., page 323 of 164 N. Y., page 148 of 58 N. E. (51 L. R. A. 687, 79 Am. St. Rep. 643).

The plaintiff is entitled to injunctive relief even though the damages are nominal. Amsterdam Knitting Co. v. Dean, 162 N. Y. 278, 56 N. E. 757. This is based upon the theory that to permit the diversion of the creek and the encroachment upon the plaintiff's rights might,

by acquiescence, ripen into the use of the whole stream for commercial purposes.   See Western U. Tel. Co. v. Syracuse El. L. & P. Co., 178 N. Y. 338, 70 N. E. 866; Penrhyn Slate Co. v. Granville Co., supra.

There is ample evidence in this case to show that at any time in low water, with the present construction of the outlet from said creek, the whole of the stream can be diverted and carried into the defendant's pond; and, if the season were an unusually dry one, continuing until winter comes, the defendant might monopolize and use the whole stream, to the injury and disadvantage of the plaintiff.   This misfortune ought to be prevented if possible.   The plaintiff is entitled to the natural flow of the water of said stream at all times, within the limits suggested, and he should not be deprived of those rights; nor should he be made to take the hazard of permitting the diversion of the stream to ripen into an acquired and permanent right.   The plaintiff must therefore have a judgment restraining the defendant from diverting and using said stream, or permitting the same to be diverted and used, for commercial purposes, with damages against the defendant, which are hereby assessed at $100, besides the costs and disbursements of this action.

Judgment is ordered accordingly.